# Matter of A-T-, Respondent

*Decided June 4, 2009*

U.S. Department of Justice
Executive Office for Immigration Review
Board of Immigration Appeals

(1)  Requests for asylum or withholding of removal premised on past persecution related to female genital mutilation must be adjudicated within the framework set out by the Attorney General in *Matter of A-T-*, 24 I&N Dec. 617 (A.G. 2008).

(2)  Once past persecution on account of an enumerated ground is shown, a presumption is triggered that there would be future harm on the basis of the original claim or, in other words, on account of the same statutory ground.

(3) An applicant for asylum or withholding should clearly indicate what enumerated ground(s) he or she is relying upon in making a claim, including the exact delineation of any particular social group to which the applicant claims to belong.

FOR RESPONDENT:  Ronald D. Richey, Esquire, Rockville, Maryland

FOR THE DEPARTMENT OF HOMELAND SECURITY:  George R. Martin, Appellate Counsel

BEFORE:  Board Panel:  OSUNA, Chairman; NEAL, Vice Chairman; HOLMES, Board Member.

OSUNA, Chairman:

On September 22, 2008, the Attorney General vacated our decision denying the respondent withholding of removal and remanded the record to the Board for further proceedings.  *See Matter of A-T-*, 24 I&N Dec. 617 (A.G. 2008) (vacating in part *Matter of A-T-*, 24 I&N Dec. 296 (BIA 2007)).  We conclude that the record should be remanded to the Immigration Judge for additional proceedings and for the entry of a new decision.

## I.  FACTUAL AND PROCEDURAL HISTORY

The respondent is a native and citizen of Mali who was admitted to the United States as a visitor on October 4, 2000.  She applied for asylum in May 2004.  The respondent testified that she underwent female genital mutilation ("FGM") as a young girl but had no memory of the procedure.  She asserted that she is opposed to FGM and that if she ever had a daughter, she would

actively oppose having the procedure performed on the child. In August 2003, the respondent learned that her father had formally arranged for her to marry her first cousin, and she feared the consequences of refusing to comply with her family's wishes. The respondent's uncle also testified on her behalf.

The Immigration Judge found the respondent barred from asylum because she did not demonstrate that she filed her asylum application within 1 year of her arrival in the United States, as required. Further, she did not qualify for an exception to the filing deadline based on changed circumstances related to when she learned about the arranged marriage. *See* 8 C.F.R. § 1208.4(a)(4) (2005).

The Immigration Judge considered the merits of the respondent's requests for withholding of removal and protection under the United Nations Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment, *adopted and opened for signature* Dec. 10, 1984, G.A. Res. 39/46. 39 U.N. GAOR Supp. No. 51, at 197, U.N. Doc. A/RES/39/708 (1984) (entered into force June 26, 1987; for the United States Apr. 18, 1988) ("Convention Against Torture"). The Immigration Judge found that the respondent's past experience with FGM did not qualify her for the prospective relief of withholding of removal. Further, the Immigration Judge determined that the respondent did not demonstrate that it was more likely than not that she would be forced into an arranged marriage against her will and that she had failed to meet her burden of proof for withholding of removal on that basis. The Immigration Judge additionally found that the respondent failed to show that she would more likely than not be tortured if she is returned to Mali, as was necessary to receive protection under the Convention Against Torture. The Immigration Judge granted the respondent voluntary departure.

## II. DECISIONS OF THE BOARD

The respondent filed an appeal with the Board, which we addressed in a published decision. *See Matter of A-T-*, 24 I&N Dec. 296. We found that even assuming that the respondent was a member of a particular social group who suffered past persecution, there was no chance that she would be persecuted again by the same procedure. Any presumption of further FGM persecution was thus rebutted by the fundamental change in the respondent's situation arising from the reprehensible but one-time infliction of FGM upon her. *See id.* at 299 (citing 8 C.F.R. § 1208.16(b)(1)(i)(A) (2007)); *see also* 8 C.F.R. § 1208.13(b)(1) (2007) (addressing the presumption of a well-founded fear of persecution in asylum cases). We next addressed the decision of the United States Court of Appeals for the Ninth Circuit in *Mohammed v. Gonzales*, 400 F.3d 785 (9th Cir. 2005), which found that FGM constitutes a continuing harm for purposes of asylum. The court analogized

the procedure to forced sterilization, which was found to be continuing persecution and a basis for asylum and withholding by the Board in *Matter of Y-T-L*, 23 I&N Dec. 601 (BIA 2003). Although acknowledging that, like sterilization, FGM had ongoing emotional and physical effects, we disagreed with the Ninth Circuit's analysis. We explained that *Y-T-L-* represented a unique departure from the ordinarily applicable principles regarding asylum and withholding of removal. This departure was based on Congress's decision to specifically identify sterilization as a basis for refugee status and the fact that to preclude sterilization victims from asylum would have contradicted congressional intent. To the contrary, there was no amendment to the refugee definition addressing victims of FGM or any other specific kind of persecution.

We upheld the Immigration Judge's findings that the respondent was barred from asylum for not timely filing her asylum application and for failing to establish an exception to this filing deadline.[1] We emphasized that the respondent likely had some awareness that her parents would arrange a marriage before she learned about the specific arrangement with her cousin, so this event did not constitute a materially changed circumstance that would excuse an untimely asylum application. Further, even accepting that the respondent was not aware of the possibility of arranged marriage until July 2003, she did not establish why 9 months was a "reasonable period" for her to wait to file her asylum application. *See* 8 C.F.R. § 1208.4(a)(4)(ii).

We also agreed with the Immigration Judge that the respondent failed to establish eligibility for withholding of removal based on her arranged marriage, a situation which is generally not considered per se persecution when it involves adults. In this case, there was no indication that the arrangement would result in a disadvantaged position for the respondent because of the age or economic status of her spouse. Further, there was insufficient evidence regarding the potential consequences if she refused the arrangement. We also questioned the visibility aspect of the particular social group of which the respondent claimed to be a member, which was suggested to be "young female members of the Bambara tribe who oppose arranged marriage." *Matter of A-T-*, 24 I&N Dec. at 303. Moreover, even if such a group existed, the respondent failed to establish a clear probability that she would be persecuted on that basis. Finally, we rejected the respondent's apparent argument that her FGM created a presumption of future harm other

---

[1] We noted that, unlike asylum, withholding of removal had no discretionary component allowing relief based solely on the severity of the past harm. *See generally Matter of S-A-K- & H-A-H-*, 24 I&N Dec. 464 (BIA 2008) (holding that applicants subject to past FGM with aggravated circumstances are eligible for a grant of asylum based on humanitarian grounds regardless of whether they can establish a well-founded fear of persecution).

than FGM, including an arranged marriage. We emphasized that in the respondent's case, the FGM bore no relationship to the motives behind the arranged marriage. We also upheld the Immigration Judge's denial of protection under the Convention Against Torture.

The respondent subsequently filed a motion to reconsider. On April 14, 2008, we denied the motion in an unpublished decision. We were not persuaded that we had misapplied the law in evaluating her claim as it related to FGM. We pointed out that the respondent's framing of her social group had shifted since her appeal and that she now presented a much broader group in arguing that FGM was only one aspect in the lifelong subjugation of women in her culture. We did not dispute the respondent's argument that an applicant could present a successful claim on the theory that FGM is a single type of harm in a series of injuries inflicted on account of one's membership in a particular social group and that an applicant continues to have a well-founded fear based on the potential for related harm. The record in the respondent's case, however, did not support this particular type of claim.

The respondent also challenged our finding that she was ineligible for asylum. We found her arguments to be without merit and did not disturb our prior decision on the matter.

## III. DECISION OF THE ATTORNEY GENERAL

The Attorney General directed us to refer our decisions in the respondent's case for his review. He subsequently vacated our denial of the respondent's claim for withholding of removal and remanded the record for reconsideration of the matter in accordance with his opinion. *See Matter of A-T-*, 24 I&N Dec. 617.[2]

The Attorney General found that the Board erred in rejecting the respondent's withholding claim on the grounds that FGM cannot occur more than once, and he pointed out that FGM is capable of repetition. *Id*. at 621 (citing *Matter of S-A-K- & H-A-H-*, 24 I&N Dec. 464, 465 (BIA 2008), and other cases). In light of this factual error, there was no basis for the Board to conclude that the past infliction of FGM by itself rebuts any presumption of future FGM.

The Attorney General determined, more broadly, that the Board had mistakenly focused on whether the future harm to life or freedom that the respondent feared would take the identical form of the past harm. Rather, the

---

[2] The Attorney General did not review the other aspects of the Board's decision, and he declined to review whether asylum or withholding was warranted based on a "continuing persecution" theory like that extended in *Matter of Y-T-L-*, 23 I&N Dec. 601. *See Matter of A-T-*, 24 I&N Dec. at 620, n.3.

law only required that once past persecution on account of an enumerated ground was shown, a presumption was triggered that there would be a threat to life or freedom "'on the basis of the original claim'—in other words, on account of the *same statutory ground*." *Matter of A-T-*, 24 I&N Dec. at 622 (quoting 8 C.F.R. § 1208.16(b)(1)(i)). The respondent's claim should therefore not be characterized as FGM persecution; rather, it was a claim of "persecution on account of membership in a particular (albeit not clearly defined) social group." *Id.* Under this rubric, if the respondent established past persecution on account of membership in a particular social group, she was entitled to the regulatory presumption of future harm. It then became the Government's burden to show "'that changed conditions obviate[d] the risk to life or freedom related to the original claim'— here, persecution on account of membership in the particular social group—not to show 'that the particular act of persecution suffered by the victim in the past will not recur.'" *Id.* at 622-23 (quoting *Bah v. Mukasey*, 529 F.3d 99, 115 (2d Cir. 2008)).[3]

The Attorney General concluded by vacating the Board's denial of the respondent's claim for withholding of removal. He remanded the record for reconsideration of that claim consistent with his opinion, to include evaluation of the following issues:

> (i) whether respondent is entitled to the presumption described in 8 C.F.R. § 1208.16(b)(1)(i) because she has established past persecution on account of membership in a particular social group (or one of the other grounds enumerated in the Act and the regulations);
> (ii) if so, whether the Government has satisfied or can satisfy its burden under 8 C.F.R §§ 1208.16(b)(1)(i)(A)-(B) and (ii) of establishing one of the factors that would rebut the presumption; and
> (iii) what effect, if any, the "relatedness" provision in 8 C.F.R. § 1208.16(b)(1)(iii) has on respondent's claim for relief.

*Id.* at 623-24 (footnote omitted).

## IV.  POSITION OF THE PARTIES ON REMAND

The Board requested that the respondent and the Department of Homeland Security ("DHS") submit supplemental briefs on remand, and both parties

---

[3] *See also Hassan v. Gonzales*, 484 F.3d 513 (8th Cir. 2007) (rejecting the argument that an applicant subject to FGM must fear repetition of the exact harm she suffered in the past); *Mohammed v. Gonzales*, 400 F.3d 785 (stating that FGM is a form of gender persecution and that those subject to FGM could be at risk for future harm, including further FGM); *cf. Oforji v. Ashcroft*, 354 F.3d 609 (7th Cir. 2003) (stating that because the applicant already underwent FGM, there was no chance that she would be personally tortured again by the procedure when sent back to her native country).

complied with thoughtful filings.  The respondent's initial position is that the Board should remand the record to the Immigration Judge so that the case can be further developed in accordance with the principles espoused by the Attorney General.  The respondent contends that there are factual matters that need to be newly addressed or further developed, such as that of the harm she will face in the future, including a repeat of FGM.  Alternatively, the respondent requests that withholding of removal be granted based on her past persecution as a female member of the Bambara tribe and the DHS's inability to rebut the resulting presumption of future persecution.

The DHS agrees that a remand is necessary for further findings of fact before the respondent's claim can be evaluated in accordance with the Attorney General's decision.  Because the matter was not consistently presented below, the DHS requests that on remand the respondent specifically delineate the particular social group(s) she claims to belong to and declare whether she is invoking any other enumerated grounds as the basis of her claim.  The DHS also wants the respondent to identify her past persecutor and state from whom she fears future harm.[4]  Additionally, the respondent should address on remand why her FGM amounts to persecution in light of her lack of memory of the incident.  Citing to evidence indicating that not all women consider FGM to be a persecutory act, the DHS asserts that the act of applying for asylum itself should not be enough to establish whether unremembered FGM constitutes persecution.  Rather, the specific circumstances of each case must be considered.  The DHS acknowledges the difficult and sensitive nature of this matter and states that where an alien has experienced FGM as a young child and cannot recall the incident as an adult, "subsequent views about the FGM held by the alien, when she is able to form such views, may, in appropriate circumstances, be deemed sufficiently pertinent and persuasive to establish whether she experienced the FGM as persecution."

## V.  ANALYSIS

We agree with the parties that, at this juncture, the record should be remanded for further fact-finding and for the parties and the Immigration Judge to readdress the respondent's withholding claim in light of the framework set out by the Attorney General in *Matter of A-T-*, 24 I&N Dec. 617.  *See* 8 C.F.R. § 1003.1(d)(3)(iv) (2009) (stating that the Board may not engage in fact-finding in the course of deciding appeals, except for taking

---

[4] As noted by the DHS, just as the method of future persecution need not be identical to the method of past persecution under the regulations setting forth a presumption of future persecution, the specific agent of future persecution need not necessarily be identical to the specific agent of past persecution.

administrative notice of commonly known facts).  On remand, the parties may present additional evidence to support their positions on the respondent's eligibility for withholding of removal.[5]

It is essential that the respondent clearly indicate on remand what enumerated ground(s) she is relying upon in making her claim, including the exact delineation of any particular social group(s) to which she claims to belong.  *See Matter of A-T-*, 24 I&N Dec. at 623, n.7 (discussing the importance of establishing the "on account of" element in asylum and withholding claims and explaining that it is the applicant's burden to initially identify the particular social group or groups in which membership is claimed); *see also id.* at n.6.  This is an issue that has not been consistently presented by the respondent in these proceedings, and this alone precludes us from resolving her case on the record now before us.[6]  Similarly, the respondent should identify, to the extent possible, who was responsible for her past persecution and, if necessary, from whom she fears future harm.  In this regard, we agree with the DHS that the respondent's claim does not fail because her past and future persecutors are not identical.  *See infra* n.4.  Further, if the respondent cannot identify the particular persons who inflicted her past FGM, this should not serve as a barrier to her claim.

The DHS requests that the respondent present evidence on remand as to why her past FGM rises to the level of persecution, because she does not remember the event and her application alone should not be enough to establish that she views FGM as a persecutory action.  The deplorable and extremely harmful nature of FGM has been long recognized by this Board and the Federal courts.  *See, e.g.*, *Matter of S-A-K- & H-A-H-*, 24 I&N Dec. 464; *Matter of Kasinga*, 21 I&N Dec. 357 (BIA 1996); *see also Bah v. Mukasey*, 529 F.3d 99; *Hassan v. Gonzales*, 484 F.3d 513 (8th Cir. 2007); *Barry v. Gonzales*, 445 F.3d 741 (4th Cir. 2006); *Mohammed v. Gonzales*, 400 F.3d 785.  In this case, the respondent presented unchallenged evidence to establish that she was subject to a severe form of FGM.  It is difficult to think of a situation, short of a claimant asserting that she did not consider FGM to be persecution, where the type of FGM suffered by the respondent, at any age, would not rise to the level of persecution.  In any event, the respondent has submitted more than just an asylum application to establish her

---

[5] This includes evidence about whether the respondent faces further risk of FGM upon return to Mali.  *See Matter of A-T-*, 24 I&N Dec. at 621 (stating that FGM is "indeed capable of repetition"); *see also Bah v. Mukasey*, 529 F.3d at 114.

[6] For example, the nexus element must be established before it can be determined whether any presumption of future harm is triggered or whether the respondent's fear of forced marriage is on account of the same enumerated ground as any past persecution.

opposition to FGM, as she expressed her opposition to the practice before the Immigration Court.[7]    Therefore, we do not think that this aspect of the respondent's claim needs to be further developed below.

If the respondent meets her burden of showing that her past persecution was on account of an enumerated ground, the burden will then shift to the Government to establish by a preponderance of the evidence that (1) there has been a fundamental change in circumstances such that the respondent's life or freedom would not be threatened on account of any of the five enumerated grounds for persecution; or (2) the respondent could avoid a future threat to her life or freedom by relocating to another part of the country of removal, and under all circumstances, it would be reasonable to expect her to do so.  *See* 8 C.F.R. § 1208.16(b)(1)(i); *see also Matter of D-I-M-*, 24 I&N Dec. 448 (BIA 2008) (discussing burden shifting upon establishment of past persecution). The findings made by the Immigration Judge on this matter, as well as in all other aspects of the respondent's case, are to be made in accordance with the Attorney General's guidance in *Matter of A-T-*, 24 I&N Dec. 617.[8]

## VI.  CONCLUSION

In accordance with the position of the parties, the record will be remanded for further proceedings to address the respondent's request for withholding of removal.  Our findings that the respondent's asylum application is time barred and that she was not eligible for protection under the Convention Against Torture were not disturbed by the Attorney General.  We accordingly incorporate our findings on those issues as set forth in our decisions denying the respondent's appeal and motion to reconsider, and we will not revisit them at this time.  We also find no reason at this juncture to readdress the issue whether a "continuing persecution" theory, like that employed in *Matter of Y-T-L-*, 23 I&N Dec. 601, should be utilized outside of the context of coerced family planning.

**ORDER:**  The record is remanded for further proceedings consistent with the foregoing opinion and for the entry of a new decision.

---

[7] We note that the Immigration Judge limited the respondent's testimony about the physical consequences of her FGM.  The respondent did, however, provide some details in her asylum application.

[8] The Attorney General inquired in *Matter of A-T-* as to the effect, if any, the relatedness provision in 8 C.F.R. § 1208.16(b)(1)(iii) has on the respondent's claim.  This provision will come into play if the respondent does not establish past persecution on account of an enumerated ground and therefore fails to trigger the presumption of future persecution, or if the presumption is triggered but is successfully rebutted by the DHS.  *See generally Matter of D-I-M-*, 24 I&N Dec. at 450; *Matter of N-M-A*, 22 I&N Dec. 312 (BIA 1998).