NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 09a0798n.06

No. 08-3417

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

FILED
**Dec 16, 2009**
LEONARD GREEN, Clerk

ALIOU BA,

    Petitioner,

v.

ERIC H. HOLDER, JR.,
Attorney General

    Respondent.

)
)
)
)
)
)
)
)
)
)
)
)
)

ON PETITION FOR REVIEW OF
AN ORDER OF THE BOARD OF
IMMIGRATION APPEALS

Before: MOORE and KETHLEDGE, Circuit Judges, and BERTELSMAN, District Judge.[*]

KETHLEDGE, J. Aliou Ba and Fatoumata Kone, a married couple, petition for review of a decision of the Board of Immigration Appeals (BIA) denying their motion to reopen removal proceedings. Because the BIA correctly concluded that the motion was untimely, we deny the petition for review.

I.

A.

---

[*]The Honorable William O. Bertelsman, United States District Judge for the Eastern District of Kentucky, sitting by designation.

The record before us strongly suggests that Kone, when about 14 years old, was a victim of female genital mutilation—*i.e.*, one of several procedures involving "partial or total removal of the external female genitalia, or other injury to the female genital organs for non-medical reasons." World Health Organization, *Female Genital Mutilation: Fact Sheet* (May 2008), *available at* http://www.who.int/mediacentre/factsheets/fs241/en/. Accompanying the asylum application that Kone hoped to file, had her motion to reopen been granted, is a letter from Dr. Crista Johnson, a licensed physician and research fellow at the University of Michigan Medical School, documenting her examination of Kone. The letter, whose accuracy the government has not disputed, confirms that Kone was subjected to "excision of the prepuce of the clitoris" and "partial excision of the labia minora," a procedure constituting Type II female genital mutilation under the World Health Organization's classification scheme.

In addition to cataloging Kone's lingering physical and psychological injuries, the letter also describes Kone's recollection of the procedure inflicted upon her. In particular, the letter states that Kone had recalled being circumcised, without anaesthesia, along with approximately 10 other girls. A single knife was used for all the girls, without sterilization. Kone was forcibly held down by two older women, while another performed the circumcision. She bled profusely following the procedure.

This evidence would have made out a compelling claim for asylum or withholding of removal. *See, e.g.*, *In re A–T–*, 25 I. & N. Dec. 4, 10 (BIA 2009) ("The deplorable and extremely harmful nature of [female genital mutilation] has been long recognized by this Board and the Federal courts"); *id.* at 11 (noting that a past experience of female genital mutilation may constitute

persecution and give rise to a presumption that an alien's life or freedom would be threatened in the future in the country of removal). As a result of a blunder by Ba and Kone's attorney, however, the evidence was not before the immigration judge (IJ) during the couple's removal proceedings, and the IJ consequently did not believe Kone's claim that she had been subjected to female genital mutilation. Further missteps during the administrative-review process have prevented the couple from obtaining relief from that apparently erroneous credibility determination.

The former Immigration and Naturalization Service (INS) initiated removal proceedings against Ba and Kone in June 2001. Ba had arrived in the United States without inspection at some point in 1997, and Kone had been admitted in June 2000 as a non-immigrant visitor with authorization to remain in the United States for six months. In separate notices to appear, therefore, the INS charged Ba with being removable as an alien present in the United States without being admitted or paroled, *see* 8 U.S.C. § 1182(a)(6)(A)(i), and Kone with being removable as an alien who remained in the United States longer than permitted. *See id.* § 1227(a)(1)(B). The notices alleged that Ba and Kone are natives and citizens of Senegal.

Ba and Kone appeared before an immigration judge for the first time in January 2002. At the hearing, Ba and Kone conceded that they were removable as charged. They claimed, however, to be natives and citizens of Mauritania, rather than of Senegal as alleged by the INS. They also expressed an intention to apply for asylum, withholding of removal, and relief under the Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment, Dec. 10, 1984, 1465 U.N.T.S. 85.

Ba and Kone appeared again for a second hearing, where Ba submitted a written application for those forms of relief from removal. He claimed that he had a well-founded fear of future persecution because the Mauritanian government might retaliate against him based on his membership in an organization dedicated to preserving the human rights of Mauritania's black population. Kone was listed as a derivative beneficiary on Ba's asylum application. *See* 8 U.S.C. § 1158(b)(3).

Ba and Kone appeared once more in May 2005 for a hearing on the merits of Ba's application for relief from removal. At the outset of the hearing, Ba conceded that he could not demonstrate extraordinary circumstances justifying his failure to file an asylum application within one year of his arrival in the United States, s*ee* 8 U.S.C. § 1158(a)(2)(B), (D), and he therefore withdrew his request for asylum. Ba and Kone then testified in support of Ba's application for withholding of removal and relief under the CAT.

During her testimony, Kone also recounted being subjected to female genital mutilation as a child in Mauritania, stating that she had been taken to an unfamiliar village where a group of elderly women performed the procedure on her. When asked by the IJ why she had not mentioned her claim of female genital mutilation at an earlier stage of the removal proceedings, Kone explained that she had told her lawyer about her experience. Kone also stated that she had not known that she would be expected to present corroborating medical evidence at the hearing.

The IJ denied relief to Ba and Kone. Although Kone had not filed an application of her own for withholding of removal or CAT relief, the IJ addressed on the merits her claim for relief on the basis of female genital mutilation. The IJ found Kone's allegation of mutilation incredible—a

conclusion that itself seems patently incorrect now—emphasizing that Kone had not made the allegation until the merits hearing and had not offered "a single piece of proof from a doctor" to corroborate that she had undergone female genital mutilation. In the IJ's view, both omissions "completely belie[d] logic."

On December 14, 2006, the BIA upheld the IJ's credibility findings and affirmed the IJ's decision. Like the IJ, the BIA rejected on the merits Kone's claim regarding female genital mutilation. The BIA concluded that the IJ had not clearly erred in finding the claim incredible in light of Kone's delay in asserting it and the absence of corroborating medical evidence in the record. Ba and Kone did not file a petition for review of the BIA's decision.

Ba and Kone thereafter retained new counsel, who prepared an asylum application on behalf of the couple's then nine-year-old daughter, Adji. That application, asserting that Adji had a well-founded fear of being subjected to female genital mutilation if removed from the United States, was filed in May 2007. Ba and Kone did not take action with respect to their own case until November 2, 2007, when they filed a motion to reopen removal proceedings in order to permit Kone to apply for asylum and withholding of removal based on having been subjected to female genital mutilation and her fear that Adji would be subjected to the same practice if removed from the United States. On March 11, 2008, the BIA denied the motion to reopen as untimely because it was filed more than 90 days after the BIA's order affirming the IJ's decision. *See* 8 U.S.C. § 1229a(c)(7)(C)(i).

B.

On April 9, 2008, Ba filed this petition for review of the BIA's decision denying the motion to reopen. Due to inadvertence by the couple's new lawyer, Kone's name was not included in the

petition's caption or body. Her alien registration number, however, was included in the upper-right portion of the petition. On August 1, 2008, Ba filed with this court a motion to amend the petition for review to add Kone as a petitioner. On September 16, 2008, this court stayed Ba and Kone's removal but deferred consideration of the motion to amend the petition.

Meanwhile, Adji's asylum application continued to make its way through the immigration bureaucracy. On July 6, 2009, over two years after her application was filed, she was granted asylum.

## II.

### A.

Two jurisdictional issues warrant discussion. The first, which neither party has raised, is whether our jurisdiction here will be affected by the Supreme Court's resolution of a case currently pending before it, *Kucana v. Holder*, 129 S. Ct. 2075 (No. 08-911). *Kucana* deals with 8 U.S.C. § 1252(a)(2)(B)(ii), which strips courts of jurisdiction to review any decision, other than an asylum determination, "the authority for which is specified under [Subchapter II of Chapter 12 of Title 8 of the United States Code] to be in the discretion of the Attorney General." The question in *Kucana* is whether the decision to grant or deny a motion to reopen falls into this category, even though the BIA's discretionary authority to decide such a motion is specified in a regulation promulgated under the relevant subchapter of the Immigration and Nationality Act (INA), *see* 8 C.F.R. § 1003.2(a), not a statutory provision within the relevant subchapter itself. *See* 8 U.S.C. § 1229a(c)(7)(A) (providing that "[a]n alien may file one motion to reopen," but setting out no standard for ruling on such a motion). Ba and Kone's petition challenges the legal standards applied by the BIA in ruling on the

motion to reopen; it thus raises "questions of law" that are not subject to the jurisdiction-stripping provision. *See* 8 U.S.C. § 1252(a)(2)(D); *Tran v. Gonzales*, 447 F.3d 937, 943 (6th Cir. 2006) (holding that "whether the BIA used the correct standard" is a legal question over which we retain jurisdiction). No matter how the Court rules in *Kucana*, therefore, we expect to retain jurisdiction over this case. *See Ghazali v. Holder*, 585 F.3d 289, 291 (6th Cir. 2009).

The second jurisdictional issue, which the government has pressed, arises from the omission of Kone's name from the petition for review filed in this court. The government argues that the failure to put Kone's name on the petition deprives us of jurisdiction to grant her relief. And since Ba's claims are now derivative of Kone's, the government says, any further proceedings before the BIA would be futile, which means we should deny the petition. Ba and Kone, for their part, argue that the petition should be amended to include Kone's name because it was clear under the circumstances that they both intended to seek review of the BIA's decision.

To a certain extent, the government has a point. The INA provides that an alien may obtain judicial review of a final order of removal, to the extent review is available, by filing a petition for review with the proper court of appeals "not later than 30 days after the date of the final order of removal." 8 U.S.C. § 1252(b)(1). The contents of that petition are governed by Federal Rule of Appellate Procedure 15, which states in relevant part that the petition must "name each party seeking review either in the caption or the body of the petition." Fed. R. App. P. 15(a)(2)(A). Here, amending the petition to add Kone now would arguably contravene the 30-day filing deadline set out in § 1252(b)(1), which we have termed "both mandatory and jurisdictional." *Prekaj v. INS*, 384 F.3d 265, 267 (6th Cir. 2004) (internal quotation marks omitted); *see also Stone v. INS*, 514 U.S. 386, 405

(1995) ("Judicial review provisions . . . are jurisdictional in nature and must be construed with strict fidelity to their terms"); Fed. R. App. P. 26(b)(2) (providing that the court's general authority to extend deadlines established by the rules does not permit it to extend the time to file "a petition to . . . review an order of an administrative agency"). And although Kone could have moved to intervene in her husband's review proceeding, she failed to do so within 30 days after the petition for review was filed. *See* Fed. R. App. P. 15(d) (a motion to intervene "must be filed within 30 days after the petition for review is filed").

But we think that Kone was fairly named in the petition for the purposes of theses rules. Although the petition did not include Kone's name, it did include her alien registration number—which was issued to her by the very agency whose decision the petition asks us to review. The government surely knew what the number signified, particularly when Kone was uniformly treated as an applicant for relief before the IJ and the BIA. Under these circumstances, we readily apply the time-honored rule that, "if a litigant files papers in a fashion that is technically at variance with the letter of a procedural rule, a court may nonetheless find that the litigant has complied with the rule if the litigant's action is the functional equivalent of what the rule requires." *Torres v. Oakland Scavenger Co.*, 487 U.S. 312, 316-17 (1988). Kone is therefore properly a party to this review proceeding.

B.

In general, an alien must file a motion to reopen removal proceedings within 90 days of entry the final order of removal. 8 U.S.C. § 1229a(c)(7)(C)(i). Ba and Kone first seek to avoid the 90-day deadline by invoking 8 U.S.C. § 1229a(c)(7)(C)(ii), which provides that, in a case involving asylum

or withholding of removal, there is "no time limit" for a motion to reopen raising a claim of "changed country conditions arising in the country of nationality or the country to which removal has been ordered." They argue that the BIA overlooked a "changed legal standing" arising out of our decision in *Abay v. Ashcroft*, 368 F.3d 634 (6th Cir. 2004), that parents may be entitled to asylum based on a concrete fear that a child will be subjected to female genital mutilation if removed. *See id.* at 640-42. Ba and Kone contend that their daughter Adji's asylum application, along with Kone's fear for Adji, established a changed legal standing excusing their late motion. But as the BIA correctly concluded, the statutory exception to the 90-day deadline is limited to claims of "changed *country* conditions." 8 U.S.C. § 1229a(c)(7)(C)(ii) (emphasis added). Because Adji's asylum application constituted a change in personal circumstances, it provides no basis to set aside the 90-day deadline for motions to reopen. *See Haddad v. Gonzalez*, 437 F.3d 515, 517 (6th Cir. 2006) (holding that an asylum applicant's divorce was a "purely personal change in circumstances" that could not justify filing a motion to reopen after 90 days had passed).

Similar reasons foreclose Ba and Kone's attempt to excuse their late filing by pointing to new, more favorable administrative precedent. It is true that the BIA's recent decisions in *In re S–A–K–*, 24 I. & N. Dec. 464 (BIA 2008), and *In re A–T–*, 25 I. & N. Dec. 4, ease the burden on aliens who base claims for asylum or withholding of removal on past instances of female genital mutilation. But a change in legal precedent is not a change in country conditions, and it too does not permit Ba and Kone to avoid the 90-day deadline.

Finally, Ba and Kone contend that they were entitled to equitable tolling of the deadline for filing the motion to reopen because they received ineffective assistance from their former counsel.

No. 08-3417
*Ba v. Holder*

*See Harchenko v. INS*, 379 F.3d 405, 410 (6th Cir. 2004) (noting that "the time for filing a motion to reopen can be equitably tolled"). Their prior counsel, they suggest, erred by failing to prepare an asylum application on Kone's behalf on the basis of her experience of female genital mutilation and her fear that Adji would be subjected to the practice if removed from the country. They observe that the IJ, in rejecting Kone's claim for relief based on female genital mutilation, placed great weight on Kone's delay in asserting the claim and her failure to submit corroborating medical evidence. A competent attorney, they say, would have raised the claim at an earlier stage of the removal proceedings and would have arranged for corroborating medical evidence to be submitted.

The BIA did not question those predicates for Ba and Kone's equitable-tolling argument. Instead, the BIA rejected this argument on the ground that Ba and Kone failed to act with due diligence after discovering their counsel's deficiencies. In particular, the BIA noted, Ba and Kone had filed a complaint concerning their prior counsel with Michigan's Attorney Grievance Commission on April 12, 2007, but they did not file a motion to reopen with the BIA until more than six months later, on November 2, 2007. That delay, the BIA reasoned, showed a lack of due diligence.

Ba and Kone challenge that conclusion on two grounds. First, they say the BIA erred by overlooking that they *did* take prompt action after filing the attorney grievance, by filing an asylum application on behalf of their daughter Adji in May 2007. But we cannot fault the BIA's conclusion that Adji's application should not have been to the exclusion of a prompt motion to reopen of their own.

-10-

Second, Ba and Kone argue that the BIA erred by arbitrarily applying a 90-day deadline to file their motion to reopen after learning of their counsel's deficient performance. But there was nothing arbitrary about that deadline. Section 1229a(c)(7)(C)(i) reflects Congress's judgment that 90 days is an appropriate period of time to allow an alien to prepare a motion to reopen. In *Muhameti v. Gonzalez*, 230 F. App'x 551 (6th Cir. 2007), we observed that the BIA had properly treated the day on which the aliens filed their attorney grievance as the date from which they should have acted with diligence. *Id.* at 553. We went on to uphold the BIA's conclusion that the aliens should have filed their motion to reopen much sooner than 199 days after that date. *See id.* (noting that the attorney grievance was filed on May 27 and that the motion to reopen was filed on December 12). Here, the delay between Ba and Kone's April 12, 2007 attorney grievance and their November 2, 2007 motion to reopen was even longer—204 days. They failed to act with due diligence, therefore, to protect their rights; and we can only conclude that the BIA did not err in rejecting their bid for equitable tolling.

All that said, however, this remains a profoundly troubling case. By all appearances, Kone was subjected to a procedure that "involves the infliction of grave harm," *Abay*, 368 F.3d at 638, and that routinely constitutes persecution within the meaning of our asylum laws. And by all appearances, the IJ's rejection of her allegation was clearly erroneous, for which Kone's lawyer at the time, rather than Kone herself, is to blame. The stark fact is that her claim was denied for reasons that now appear, undisputedly, to be untrue.

Compounding the difficulty is that the immigration bureaucracy seems to be working against itself in this case. Even as the government has litigated this case to remove Ba and Kone from the

country, it has granted asylum status to their minor daughter, Adji, which includes authorization for her to remain here indefinitely. This in turn creates a profound dilemma for her parents, Ba and Kone: If removed, they can take Adji with them, exposing her to the very risk of female genital mutilation that the government's grant of asylum was meant to prevent. Or they can leave their daughter behind. Ba and Kone also have a second daughter, born in the United States and thus a citizen with the right to remain here, but who, if she accompanies her parents, risks the same procedure that her mother underwent.

For the reasons set out above, we have no lawful basis to provide the relief Ba and Kone seek here. But the government—or specifically the BIA—still has a decision to make. During oral argument in this case, counsel for the government informed us that Ba and Kone have filed with the BIA a new motion to reopen their removal proceedings, based on the grant of asylum to Adji. That motion, Ba and Kone concede, violates not only the 90-day time limit for motions to reopen but also the numerical bar that limits aliens to filing one such motion. *See* 8 U.S.C. § 1229a(c)(7)(A). The motion therefore asks the BIA to reopen their case *sua sponte. See* 8 C.F.R. § 1003.2(a) ("The Board may at any time reopen or reconsider on its own motion any case in which it has rendered a decision"). Whether to do so, of course, is up to the Board; and for good reasons, it exercises that authority "sparingly." *In re G–D–*, 22 I. & N. Dec. 1132, 1133 (BIA 1999). But as the Board's rule itself implicitly recognizes, certain cases call out for administrative grace. From our admittedly limited vantage point, this appears to be one of them.

The petition for review is denied.