**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 17-3742
_____

OSBELI LOPEZ-MONROY,

Petitioner

v.

UNITED STATES DEPARTMENT OF HOMELAND SECURITY;
ATTORNEY GENERAL UNITED STATES OF AMERICA;
UNITED STATES IMMIGRATION & CUSTOMS ENFORCEMENT,

Respondents

_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency No.:  A089-006-588)
Immigration Judge:  Honorable Mirlande Tadal

_____

Submitted under Third Circuit L.A.R. 34.1(a)
September 14, 2018

Before: JORDAN, VANASKIE and RENDELL, Circuit Judges

(Opinion filed:  October 24, 2018)

_____

O P I N I O N[1]

_____

RENDELL, <u>Circuit Judge</u>:

Osbeli Lopez-Monroy, a native and citizen of Guatemala, seeks review of the Board of Immigration Appeals' ("BIA") decision affirming the Immigration Judge's ("IJ") denial of his petitions for statutory withholding of removal and request for protection under the Convention Against Torture ("CAT"). Because Lopez-Monroy failed to state a cognizable particular social group ("PSG") and the BIA's conclusion that Lopez-Monroy failed to provide sufficient facts amounting to torture is supported by substantial evidence, we will affirm.[2]

## I. Background[3]

Mr. Lopez-Monroy entered the United States in 2003 at the age of fifteen without inspection or admission. In 2009, the Department of Homeland Security issued Lopez-Monroy a Notice to Appear commencing immigration removal proceedings. In 2017, Lopez-Monroy renewed his earlier effort to obtain statutory withholding of removal and protection under CAT.

The IJ held a hearing to review the petitions. Lopez-Monroy testified at the hearing that he came to the United States from Guatemala, fleeing death threats from the

---

[1] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

[2] The BIA had jurisdiction under 8 C.F.R. § 1003.1(b)(3). We have jurisdiction to hear this appeal from the BIA under 8 U.S.C. § 1252(a)(1).

[3] Because we write for the parties, we set out only what is necessary to explain our decision.

Villeda family "who have threatened [him] for [his] entire life." A.R. 182. Lopez-Monroy's mother also testified at the hearing about threats from the Villeda family. Lopez-Monroy called an expert witness to testify about the dangers in Guatemala. Lopez-Monroy's written submission urged that "it is more likely than not that he would be persecuted on account of his membership in a particular social group if he [were] forced to return to Guatemala, namely, his status as 'an individual whose family was targeted by a family of criminals,'" A.R. 621, and "[he] will face torture and severe human rights violations if he is returned to Guatemala," A.R. 627.

The IJ denied Lopez-Monroy's petitions. She found that Lopez-Monroy failed to state a cognizable PSG with a "'clear benchmark' for the 'outer limits' of th[e] group." A.R. 115. The IJ also found that, even assuming a cognizable social group existed, Lopez-Monroy failed to show past persecution or a clear probability of future persecution. As for the CAT petition, the IJ found it was not likely that Lopez-Monroy would be subjected to torture if he returned to Guatemala.

Mr. Lopez-Monroy appealed the IJ's decision to the BIA. The BIA dismissed the appeal. The BIA found Lopez-Monroy did not state a cognizable PSG. The BIA also rejected the alternative PSG proffered by Lopez-Monroy, namely, "members of [his] family who attempted to speak out against the Villeda family," because this was a new definition "not raised during the prior proceedings." A.R. 5. Regarding the CAT petition, the BIA found "Respondent has not demonstrated that [his] experiences, in their entirety . . . amount to torture." *Id*.

Lopez-Monroy filed a Petition for Review with our court.

3

## II. Discussion

We review questions of law *de novo*, *Castro v. Att'y Gen.*, 671 F.3d 356, 365 (3d Cir. 2012), and agency determinations under the substantial evidence standard, *I.N.S. v. Elias-Zacarias*, 502 U.S. 478, 481 (1992). We will only overturn an agency's determination if "any reasonable adjudicator would be compelled to conclude to the contrary" based on the record. 8 U.S.C. § 1252(b)(4)(B). When reviewing the BIA's decision, we consider the IJ's opinion to the extent the BIA "substantially relied" upon it in reaching its decision. *Camara v. Att'y Gen.*, 580 F.3d 196, 201 (3d Cir. 2009). With these standards in mind, we review the BIA's denial of Lopez-Monroy's petitions for statutory withholding of removal and protection under CAT.

**A. The BIA correctly denied the petition for statutory withholding of removal because Lopez-Monroy's PSG is not cognizable.**

To succeed on a petition for statutory withholding of removal, a petitioner bears the burden to show that he is likely to be persecuted if he returns to his country "on account of . . . [his] membership in a particular social group." 8 U.S.C. § 1101(a)(42)(A). A PSG must be:

> (1) Composed of members who share a common immutable characteristic;

> (2) Defined with particularity, and

> (3) Socially distinct within the society in question.

4

*Matter of M-E-V-G-*, 26 I. & N. Dec. 227, 237 (B.I.A. 2014).[4]  The BIA found two

reasons to reject Lopez-Monroy's PSG of "an individual whose family was targeted by a

family of criminals."  First, the PSG is not cognizable because it is impermissibly

circular. Second, the PSG lacks particularity.[5]

First, we agree that Lopez-Monroy's PSG is impermissibly circular.  A cognizable

PSG "must exist independently of the persecution suffered."  *Lukwago v. Ashcroft*, 329

F.3d 157, 172 (3d Cir. 2003); *see also Escobar v. Gonzales*, 417 F.3d 363, 367 (3d Cir.

2005) ("The persecution cannot be what defines the contours of the group.").  The

defining feature of Lopez-Monroy's PSG—targeted by a family of criminals—is the very

harm from which he seeks protection.  Because the PSG "must have existed before the

persecution began" and the fact of being targeted by the Villeda family created the

persecution, Lopez-Monroy's PSG is not cognizable.  *Lukwago*, 329 F.3d at 172.

Second, substantial evidence supports the BIA's conclusion that the PSG is not

defined with particularity.  A PSG is "particular," if it provides a "clear benchmark for

determining who falls within the group."  *M-E-V-G-*, 26 I. & N. Dec. at 239.  The terms

cannot be "amorphous, overbroad, diffuse, or subjective."  *Id.*  The IJ found Lopez-

Monroy's PSG included "kin of the third degree" with "different last names from one

another." A.R. 115.  Based on the remoteness of the relationships, the IJ concluded,

---

[4] In *S.E.R.L. v. Att'y Gen.*, we afforded this definition *Chevron* deference, and we do the
same here. 894 F.3d 535, 555 (3d Cir. 2018) ("*M-E-V-G-* is based on a reasonable
construction of the statute, whether or not it is the only possible interpretation or . . . the
one [we] might think best." (internal quotation marks and citation omitted)).

[5] To the extent the BIA also found fault with the social distinctiveness of Lopez-Monroy's
PSG, we need not address that issue, since our conclusions with respect to circularity and
particularity are sufficient to decide the case.

"Respondent has not provided a 'clear benchmark' for the 'outer limits' of this group." A.R. 115. The BIA agreed, concluding "[t]he respondent has not cited to any evidence to suggest that there is a consensus among members of society as to the furthest degree of consanguinity one could have and still be regarded as a member of the group." A.R. 5. Although the BIA has recognized "family" as a cognizable PSG in certain contexts, the determination depends on "the nature and degree of the relationships involved and how those relationships are regarded by the society in question." *Matter of L-E-A-*, 27 I. & N. Dec. 40, 43 (B.I.A. 2017). Because a reasonable adjudicator could have found based on the record that the relationships were too remote to be particularized, we will not disturb the BIA's conclusion.

Lopez-Monroy urges that the BIA improperly excluded his proposed alternative PSG. In the first instance, it is the burden of the petitioner to "clearly indicate . . . [the] enumerated ground(s) []he is relying upon in making h[is] claim." *Matter of W-Y-C- & H-O-B-*, 27 I. & N. Dec. 189, 191 (B.I.A. 2018) (internal quotation marks omitted) (quoting *Matter of A-T-*, 25 I. & N. Dec. 4, 10 (B.I.A. 2009)). "Where . . . an applicant delineates a social group for the first time on appeal, the Immigration Judge will not have had an opportunity to make relevant factual findings, which [the BIA] cannot do in the first instance on appeal." *Matter of W-Y-C-*, 27 I. & N. Dec. at 191 (citing 8 C.F.R. § 1003.1(d)(3)(iv)). On appeal to the BIA, Lopez-Monroy urged an alternative PSG, namely "members of [his] family who attempt to speak out against the Villeda family," A.R. 5, a different PSG from the one proposed in closing argument before the IJ. Lopez-Monroy has pointed us to testimony elicited during the hearing before the IJ that would

6

support this new PSG. However, the testimony provided does not clearly delineate the PSG, nor was it specifically argued to the IJ. Thus, the BIA did not err by refusing to evaluate it on appeal.

Because Lopez-Monroy's last argument assumes a cognizable PSG, and we agree with the BIA's conclusion that Lopez-Monroy did not meet his burden to establish a cognizable PSG, we need not address whether the BIA's "nexus and past persecution analysis [were] perfunctory and imprecise." Opening Br. at 23.[6]

**B. The BIA had substantial evidence that the likelihood of future harm did not amount to torture meriting CAT protection.**

To receive protection under CAT, a petitioner must show it is more likely than not he will be tortured if returned to the country of proposed removal. 8 C.F.R. § 208.17(a). When making this determination, the IJ must consider two questions: "(1) what is likely to happen to the petitioner if removed; and (2) does what is likely to happen amount to the legal definition of torture." *Kaplun v. Att'y Gen.*, 602 F.3d 260, 271 (3d Cir. 2010). An experience amounts to torture if it: (1) causes "severe physical or mental pain or suffering"; (2) is intentionally inflicted; (3) for a proscribed purpose; (4) "by or at the instigation of or with the consent or acquiescence of a public official who has custody or

---

[6] Lopez-Monroy makes two additional arguments in the brief. He argues the BIA erred because it should have made a determination as to past persecution, even though it found Lopez-Monroy failed to state a cognizable PSG. This is incorrect. *INS v. Bagamasbad*, 429 U.S. 24, 25 (1976) ("As a general rule courts and agencies are not required to make findings on issues the decision of which is unnecessary to the results they reach."). Lopez-Monroy also argues that the BIA failed to appropriately evaluate the testimony of the expert witness. Because the expert witness only provided testimony about Guatemala generally, and provided no information about the Villeda family particularly, the IJ and the BIA did not err by placing little weight on the testimony.

physical control of the victim"; and (5) not arising from lawful sanctions. *Matter of J-E-*, 23 I. & N. Dec. 291, 297 (B.I.A. 2002).

The IJ found that Lopez-Monroy is unlikely to be physically harmed if he returns to Guatemala because "[he] remained in Guatemala, without incident, during the eleven years he states he was threatened by the Villedas." A.R. 119. The IJ also found "verbal threats do[] not constitute torture." A.R. 120 (citing *Auguste v. Ridge*, 395 F.3d 123 (3d Cir 2005)). The BIA reviewed the IJ's findings and the record, placing weight on the "three threatening encounters [Lopez-Monroy] experienced in Guatemala, two of which involved being held at gunpoint and threatened with death." A.R. 5. The BIA nonetheless determined that Lopez-Monroy did not demonstrate that these three occasions happening over the span of eleven years amounted to torture, or established that he would be tortured if he returned to Guatemala. Lopez-Monroy argues the BIA erred because the past threats from the Villeda family constituted attempted murder, which constitutes torture. *Comollari v. Ashcroft*, 378 F.3d 694, 697 (7th Cir. 2004). The BIA weighed the severity of the past threats to Lopez-Monroy, including the argument that the Villeda family attempted to murder Lopez-Monroy, but agreed with the IJ that the past events did not "result[] in severe pain or suffering so as to amount to torture." A.R. 5 (internal quotation marks omitted). Because this conclusion is supported by substantial evidence, we will not disturb the BIA's ruling.

8

### III. Conclusion

For the above reasons, we will deny the Petition for Review of the Board of Immigration Appeals' denial of Lopez-Monroy's petitions for statutory withholding of removal and CAT protection.