Foulah v. Barr

BIA
Morace, IJ
A099 938 822

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

# <u>SUMMARY ORDER</u>

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 5th day of March, two thousand twenty.

PRESENT:
> BARRINGTON D. PARKER,
> DEBRA ANN LIVINGSTON,
> WILLIAM J. NARDINI,
> *Circuit Judges.*

---

MATHILDE GENEVIEVE FOULAH,
> *Petitioner*,

v.                                                                                      17-1462

WILLIAM P. BARR, UNITED STATES ATTORNEY
GENERAL,
> *Respondent*.

---

For Petitioner:               RONALD D. RICHEY, Rockville, MD.

For Respondent:              MARGOT P. KNIFFIN, Trial Attorney (Joseph H. Hunt, Assistant Attorney General; Jessica A. Dawgert, Senior Litigation Counsel, *on the brief*), Office of Immigration Litigation, United States Department of Justice, Washington, DC.

**UPON DUE CONSIDERATION** of this petition for review of a Board of Immigration Appeals ("BIA") decision, it is hereby **ORDERED, ADJUDGED, AND DECREED** that the petition for review is **DENIED**.

Petitioner Mathilde Genevieve Foulah, a native and citizen of Guinea, seeks review of an April 6, 2017 decision of the BIA affirming an October 8, 2014 decision of an Immigration Judge ("IJ") denying Foulah's motion to reopen. *In re Mathilde Genevieve Foulah,* No. A 099 938 822 (BIA Apr. 6, 2017), *aff'g* No. A 099 938 822 (Immig. Ct. N.Y. City Oct. 8, 2014). Foulah applied for asylum and related relief in 2007 based on the female genital mutilation ("FGM") she endured. The IJ deemed her asylum application untimely because she filed it more than one year after her arrival in the United States in 2004. Nevertheless, the IJ granted Foulah withholding of removal. Over six years later, in 2014, Foulah moved to reopen to apply for asylum based on changed country conditions and caselaw. It is from the denial of that motion to reopen that Foulah now appeals. We assume the parties' familiarity with the underlying facts and procedural history in this case.

Under the circumstances of this case, we have reviewed both the IJ's and BIA's decisions "for the sake of completeness." *Wangchuck v. Dep't of Homeland Sec.*, 448 F.3d 524, 528 (2d Cir. 2006). We review the agency's denial of a motion to reopen for an abuse of discretion but review any finding regarding changed country conditions for substantial evidence. *Jian Hui Shao v. Mukasey*, 546 F.3d 138, 168–69 (2d Cir. 2008).

An alien seeking to reopen proceedings may file only one motion to reopen no later than ninety days after the date on which the final administrative decision was rendered. 8 U.S.C. § 1229a(c)(7)(A), (C)(i); 8 C.F.R. § 1003.23(b)(1). It is undisputed that Foulah's 2014 motion to reopen was untimely because she filed it six years after the IJ's 2008 decision denying asylum and granting withholding of removal. However, the time limitation for filing a motion to reopen does not apply if reopening is sought to apply for asylum and the motion is "based on changed country conditions arising in the country of nationality or the country to which removal has been ordered, if such evidence [of changed country conditions] is material and was not available and would not

2

have been discovered or presented at the previous proceeding." 8 U.S.C. § 1229a(c)(7)(C)(ii); *see also* 8 C.F.R. § 1003.23(b)(4)(i).

The agency did not abuse its discretion in denying Foulah's motion to reopen. Even assuming that the Attorney General's and BIA's decisions in *Matter of A-T-*, 24 I. & N. Dec. 617 (AG 2008), and *Matter of A-T-*, 25 I. & N. Dec. 4 (BIA 2009), respectively, materially impact Foulah's case, this has no bearing on the motion to reopen. On their face, the relevant statutory and regulatory provisions do not allow for "changed circumstances" more generally to excuse untimeliness, only changed country conditions. *See* 8 U.S.C. § 1229a(c)(7)(C)(ii); 8 C.F.R. § 1003.2(c)(3)(ii); 1003.23(4)(i); *see also Yuen Jin v. Mukasey*, 538 F.3d 143, 151 (2d Cir. 2008) (noting that motions to reopen require alien to "establish changed *country* conditions"); *Barry v. Mukasey*, 286 F. App'x 747, 748 (2d Cir. 2008) ("Untimely motions to reopen must satisfy an exception provided in [8 U.S.C. § 1229a(c)(7)(C)(ii)], which does not include a change in law."). Changes in "applicable U.S. law" may qualify as "changed circumstances" that excuse the initial one-year filing deadline for asylum applications if they "materially affect [an] applicant's eligibility for asylum." 8 U.S.C. § 1158(a)(2)(B); 8 C.F.R. § 1208(a)(4)(i)(B). But they do not excuse the untimely filing of a motion to reopen. Moreover, even where changes in the law do qualify as "changed circumstances," an applicant still must file "within a reasonable period given those 'changed circumstances.'" 8 C.F.R. § 1208(a)(4)(ii). Thus, even if Foulah were filing an asylum application in the first instance, the nearly five years that elapsed after the BIA's decision in *Matter of A-T-* before her filing places her firmly outside any "reasonable period."

Turning to Foulah's claim of changed country conditions, the agency reasonably concluded that she failed to establish a material change in country conditions as needed to excuse the filing deadline for her untimely motion to reopen. "In determining whether evidence accompanying a motion to reopen demonstrates a material change in country conditions that would justify

3

reopening, [the agency] compare[s] the evidence of country conditions submitted with the motion to those that existed at the time of the merits hearing below." *In re S-Y-G-*, 24 I. & N. Dec. 247, 253 (BIA 2007).

The precise basis of Foulah's new asylum claim is unclear. In her motion to reopen and attached asylum statement and application, she stated that she feared (1) future FGM and (2) abuse and mistreatment by men and the government because she is a woman. In her BIA appeal, she stated that she wanted to "reopen her previous case" to pursue her FGM claim but also that she feared "future violence, forced marriage, rape, severe discrimination and/or other forms of persecution due, inter alia, to her ethnic group and/or due to her membership in a particular social group in the male-dominated and male-controlled society and culture in Guinea" and that she was at heightened risk for Ebola as a woman. In her brief to this Court, she argues that the country conditions evidence affects her claim of future fear as a vulnerable woman and as someone who will be vocally against FGM. Regardless of how she frames her claim, however, Foulah did not present country conditions evidence that established a material change in conditions in Guinea.

During her original proceeding before the IJ, the only country conditions evidence that Foulah submitted was the 2007 U.S. State Department Human Rights Report ("2007 Report") for Guinea. As relevant to her claims based on FGM and gender-based violence or discrimination, the 2007 Report catalogued violent widespread civil unrest during which security forces raped and killed women and children, and noted "[v]iolence and societal discrimination against women, prostitution of young girls, and female genital mutilation (FGM)." The 2007 Report also stated that prison guards harassed and sexually assaulted female prisoners; traditional judicial systems discounted evidence provided by women; rapes were rarely prosecuted (if at all); domestic violence was common; FGM was illegal but widely practiced; and women were legally excluded from certain occupations. To the extent Foulah raised claims based on her ethnicity, the 2007

4

Report indicated that Foulah's Soussou ethnic group was one of the three main ethnic groups, and the president and a disproportionate number of senior military officials and public sector employees were Soussou. Moreover, Guinean law prohibited ethnic discrimination, and, while there was "[w]idespread societal ethnic discrimination," the prior ethnic violence was primarily directed against a different ethnic group than Foulah's. *See* C.A.R. 287–300.

The evidence Foulah submitted with her motion to reopen did not present a material change in these conditions. According to the 2013 U.S. State Department Human Rights Report for Guinea ("2013 Report"), societal and state violence persisted, and women continued to face the same discrimination and violence, including FGM. The 2013 Report addresses ethnic violence but, again, none specifically against the Soussou. The remainder of Foulah's submission was comprised of articles detailing political corruption and election-related violence in Guinea, but they do not mention any heightened persecution of women, FGM victims or activists, or Soussous.

Accordingly, because Foulah failed to demonstrate a material change in country conditions, the agency did not abuse its discretion in denying her motion to reopen. *See* 8 U.S.C. § 1229a(c)(7)(C). Further, on this record, Foulah's argument that the agency overlooked material evidence is without merit. *See Jian Hui Shao*, 546 F.3d at 169 ("We do not demand that the [agency] expressly parse or refute on the record each individual argument or piece of evidence offered." (quotation marks omitted)); *see also Xiao Ji Chen v. U.S. Dep't of Justice*, 434 F.3d 144, 159 n.13 (2d Cir. 2006) ("[W]e presume that an IJ has taken into account all of the evidence before him, unless the record compellingly suggests otherwise.").

For the foregoing reasons, the petition for review is **DENIED**. All pending motions and applications are **DENIED** and stays **VACATED**.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

5