# Matter of A-T-, Respondent

*Decided by Attorney General September 22, 2008*

U.S. Department of Justice
Office of the Attorney General

The Attorney General vacated the decision of the Board of Immigration Appeals and remanded the record for reconsideration of questions relating to the respondent's eligibility for withholding of removal pursuant to 8 C.F.R. § 1208.16(b)(1) (2008) based on her claim that she has been subjected to female genital mutilation.

FOR RESPONDENT: Ronald D. Richey, Esquire, Rockville, Maryland

FOR THE DEPARTMENT OF HOMELAND SECURITY: Christopher R. Coxe, Jr., Assistant Chief Counsel

## BEFORE THE ATTORNEY GENERAL
(September 22, 2008)

Pursuant to 8 C.F.R. § 1003.1(h)(1)(i) (2008), I direct the Board of Immigration Appeals to refer to me for review its decision in *Matter of A-T-*, 24 I&N Dec. 296 (BIA 2007), as well as its April 14, 2008, order denying respondent's motion for reconsideration. For the reasons set forth in the accompanying opinion, I vacate the Board's decision denying respondent's claim for withholding of removal and remand that claim for further proceedings in accordance with the opinion.

## OPINION

This case involves the proper treatment under our immigration laws of a person subjected to one of several procedures known as "female genital mutilation." Such procedures, which rightly have been condemned here and abroad, *see Bah v. Mukasey*, 529 F.3d 99, 103 (2d Cir. 2008) (citing sources), involve the "partial or total removal of the external female genitalia, or other injury to the female genital organs for non-medical reasons." World Health Organization, *Female Genital Mutilation: Fact Sheet* (May 2008), *available at* http://www.who.int/mediacentre/factsheets/fs241/en/index.html. In *Matter of Kasinga*, 21 I&N Dec. 357 (BIA 1996) (en banc), the Board of Immigration Appeals held that a well-founded fear of being subjected to female genital mutilation in the future may be a basis for asylum in this country. In the present case, the Board rejected a claim for withholding of removal by a

woman who had *previously* been subjected to female genital mutilation, reasoning that because her genitalia already had been mutilated she had no basis to fear future persecution if returned to her home country. For the reasons stated below, I conclude that this decision was flawed, and I therefore vacate the Board's decision on respondent's withholding claim and remand for reconsideration consistent with this opinion.

## I.

To the extent relevant here, the present case involves a claim for withholding of removal.[1] Under section 241(b)(3)(A) of the Immigration and Nationality Act, 8 U.S.C. § 1231(b)(3)(A) (2006), an alien seeking withholding of removal to another country must show that "the alien's life or freedom would be threatened in that country because of the alien's race, religion, nationality, membership in a particular social group, or political opinion." By regulation, where an alien shows that she suffered *past* persecution in the proposed country of removal on account of one of these grounds, "it shall be presumed that the applicant's life or freedom would be threatened in the future in the country of removal on the basis of the original claim." 8 C.F.R. § 1208.16(b)(1)(i) (2008). This presumption, by its terms, is mandatory. As the Board explained when it discussed the similar regulatory structure for asylum claims, a presumption of future persecution is based on "the possibility that a persecutor, once having shown an interest in harming the applicant, might seek to harm the applicant again should the applicant be forced to return within the persecutor's reach." *Matter of N-M-A-*, 22 I&N Dec. 312, 317-18 (BIA 1998) (discussing asylum). In essence, the "'past serves as an evidentiary proxy for the future.'" *Id.* at 318 (quoting *Marquez v. INS*, 105 F.3d 374, 379 (7th Cir. 1997)).[2]

---

[1] The respondent in this case also sought asylum and relief under the United Nations Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment ("CAT"), *adopted and opened for signature* Dec. 10, 1984, G.A. Res. 39/46, 39 U.N. GAOR Supp. No. 51, at 197, U.N. Doc. A/RES/39/708 (1984) (entered into force June 26, 1987; for the United States Apr. 18, 1988). These claims, which were rejected on various grounds by the Immigration Judge and the Board of Immigration Appeals, are not addressed in this opinion.

[2] Although the regulations were revised in 2000, the supplementary information accompanying the final rule makes clear that the current regulations, which govern both asylum and withholding of removal, continue to follow the Board's interpretation in *Matter of N-M-A-*, *supra*. *See* Asylum Procedures, 65 Fed. Reg. 76,121, 76,127 (Dec. 6, 2000) ("The amended language . . . is not intended to alter the holding in the Board decision *Matter of N–M–A*, Int. Dec. 3368 (BIA 1998), that the presumption raised by a finding of past persecution applies only to a fear of future persecution based on the original persecution, and

(continued...)

When an eligible alien has shown past persecution on account of one of the specified grounds, it "shall be presumed that the [alien's] life or freedom would be threatened in the future in the country of removal on the basis of the original claim." 8 C.F.R. § 1208.16(b)(1)(i). In such a case, the Government then bears the burden of establishing, by a preponderance of the evidence, either of two things that may rebut the presumption: a "fundamental change in circumstances such that the applicant's life or freedom would not be threatened on account of any of the five [protected] grounds" or that the applicant reasonably could "avoid a future threat to his or her life or freedom by relocating to another part of the proposed country of removal." *Id.* §§ 1208.16(b)(1)(i)(A)-(B), (ii). If, however, the "applicant's fear of future threat to life or freedom is unrelated to the past persecution," he or she "bears the burden of establishing that it is more likely than not that he or she would suffer [the future] harm [to life or freedom that he or she fears]." *Id.* § 1208.16(b)(1)(B)(iii).

Respondent, a 28-year-old citizen and native of Mali, sought withholding of removal (as well as the forms of relief not addressed in this opinion, *see supra* note 1) on several grounds. Stating that she is "a Moslem and she is from the Bambara tribe," respondent contended before the Board that she was subjected to female genital mutilation as a young girl; that she is opposed to the practice; and that, if she were to return to Mali and have a daughter, she would have no choice but to see her daughter subjected to female genital mutilation despite her opposition. She also contended that, if she were to return to Mali, she would be forced to marry her first cousin, and that she feared her "father would harm her mother" if she resisted her "father's and her tribe's wishes" with respect to both "the arranged marriage" and female genital mutilation.

On January 19, 2005, an Immigration Judge denied respondent's request for withholding of removal. The Immigration Judge stated that the "Court [wa]s sympathetic to the respondent" and emphasized that "we as a nation do not subscribe to female [genital mutilation, which is] medically dangerous [and] an invasion on individual young women." Nevertheless, noting that respondent had been subjected to the practice as a young girl and did "not even recall" the experience, the Immigration Judge found that respondent had neither proved past persecution nor satisfied her burden of establishing the legal grounds for the relief she sought.

On September 27, 2007, the Board affirmed by published opinion. *See Matter of A-T-*, 24 I&N Dec. 296 (BIA 2007). The Board acknowledged its

---

(...continued)

not to a fear of persecution from a new source unrelated to the past persecution. . . . [T]he [amended] regulations retain and specify the requirement that the presumption relates only to fear of harm based on facts that give rise to the original persecution.").

previous decision, *Matter of Kasinga*, *supra*, in which it held that female genital mutilation can constitute a form of persecution on account of membership in a particular social group. In that case, the Board granted asylum to a woman of the Tchamba-Kunsuntu Tribe in Togo based on her fear that she would be subjected to female genital mutilation if sent back to that country. *See id*. at 358. As the Board explained in *Kasinga*, "[Female genital mutilation] is practiced, at least in some significant part, to overcome sexual characteristics of young women of the tribe who have not been, and do not wish to be, subjected to [the practice]. We therefore find that the persecution the applicant fears in Togo is 'on account of' her status as a member of the defined social group." *Id.* at 367.

The Board assumed *arguendo* that respondent in the present case was, like the applicant in *Kasinga*, a member of a particular social group (although the Board did not identify the group or define its characteristics). The Board, however, distinguished respondent's case from *Kasinga* principally on the ground that she had been subjected to female genital mutilation in the *past*. As the Board explained:

> In *Kasinga* . . . , the applicant had not yet undergone [female genital mutilation] and was facing an imminent threat of being subjected to the procedure if returned to her country of origin. The respondent in this case has already undergone [female genital mutilation]. Consequently, even assuming arguendo that she is a member of a particular social group who suffered past persecution, there is no chance that she would be personally persecuted again by the procedure. Any presumption of future [female genital mutilation] persecution is thus rebutted by the fundamental change in the respondent's situation arising from the reprehensible, but one-time, infliction of [female genital mutilation] upon her. 8 C.F.R. § 1208.16(b)(1)(i)(A).

*Matter of A-T-*, *supra*, at 299 (internal quotation marks, citation, and brackets omitted). Thus, the Board held that the past infliction of female genital mutilation on respondent was *by itself* a "fundamental change in circumstances" that rebutted the regulatory presumption of future harm. *Id.*[3]

Respondent filed a motion for reconsideration. Among other things, she contended that the Board failed to recognize that female genital mutilation is "only one aspect of" the persecution that can be visited upon an individual based upon the individual's membership in a protected group, explaining that "it is not the means or forms of persecution that must be linked, but the reasons the victim is singled out for harm, *i.e*., her possession of a characteristic protected by the Refugee Act." Respondent went on to assert that the female

---

[3] The Board also rejected respondent's argument that female genital mutilation qualified as "continuing persecution" that would qualify her as a refugee, distinguishing *Matter of Y-T-L-*, 23 I&N Dec. 601 (BIA 2003), which had addressed asylum claims of aliens subjected to forced sterilization. *See Matter of A-T-*, *supra*, at 299-301. I do not address that portion of the Board's opinion.

genital mutilation she suffered as a child and the treatment she feared upon return to Mali—namely, "forced marriage"—were "linked" because she was "vulnerable to both" as "a member of a particular social group."

The Board denied respondent's motion in an unpublished order. The Board agreed with respondent that "an asylum applicant could present a successful claim on the theory that [female genital mutilation] is a single type of harm in a series of injuries inflicted on account of one's membership in a particular social group." The Board stated, however, that it was "unable to conclude on this particular record that the respondent has met her burden of proof for such a claim."[4]

## II.

In rejecting respondent's withholding-of-removal claim on the grounds that female genital mutilation cannot occur more than once and that any future harm to respondent must take precisely the same form as past persecution, the Board committed error. To begin with, the Board based its analysis on a false premise: that female genital mutilation is a "one-time" act that cannot be repeated on the same woman. *Matter of A-T-*, *supra*, at 299. As several courts have recognized, female genital mutilation is indeed capable of repetition. *See, e.g.*, *Bah v. Mukasey*, *supra*, at 114 ("[F]emale genital mutilation is not necessarily a one time event. . . . [R]ecord evidence reveals that genital mutilation, such as infibulation, is often repeated in Guinea."); *Bah v. Gonzales*, 462 F.3d 637, 644 n.3 (6th Cir. 2006) (Gibbons, C.J., concurring) ("In several cases asylum applicants have successfully produced evidence indicating a risk of further mutilation."); *Tunis v. Gonzales*, 447 F.3d 547, 550 (7th Cir. 2006) (noting that the alien "fears that if she is returned to Sierra Leone she will be forced to undergo the procedure again"); *Mohammed v. Gonzales*, 400 F.3d 785, 800-01 (9th Cir. 2005) (noting that the alien "might also be at risk of further genital mutilation" because she had not yet "been subjected to infibulation"). In fact, the Board itself recently acknowledged as much in a case granting asylum on humanitarian grounds to two women who had suffered female genital mutilation multiple times. *See Matter of S-A-K- and H-A-H-*, 24 I&N Dec. 464, 465 (BIA 2008) (stating that one applicant's

---

[4] Respondent has filed petitions for review in the United States Court of Appeals for the Fourth Circuit with respect to both the Board's original decision and its order denying her motion for reconsideration. These petitions, which the Fourth Circuit has consolidated, are currently pending. *See* Docket Nos. 07-2080 and 08-1557.

"vaginal opening was sewn shut" approximately five times "after being opened to allow for sexual intercourse and child birth").[5]

Given this factual error, there was no basis for the Board's legal conclusion that the past infliction of female genital mutilation by itself rebuts "[a]ny presumption of future [female genital mutilation] persecution." *Matter of A-T-*, *supra*, at 299. Under the regulations, if respondent could show past persecution on account of a protected ground—here, membership in a particular social group (which the Board assumed *arguendo* but did not find and did not define)—she would be entitled to the mandatory presumption that her "life or freedom would be threatened in the future . . . on the basis of the original claim." 8 C.F.R. § 1208.16(b)(1). Once this presumption arises, the Government would have the burden of proving the following grounds for rebuttal: either a "fundamental change in circumstances" or that respondent reasonably could avoid future harm by relocating. *Id.* § 1208.16(b)(1)(i). The fact that respondent had previously been the victim of female genital mutilation would not and could not, by itself, rebut the presumption because, contrary to the Board's assumption, she could possibly be subjected to the practice again.

More broadly, the Board was wrong to focus on whether the future harm to life or freedom that respondent feared would take the "identical" form—namely, female genital mutilation—as the harm she had suffered in the past. *Matter of A-T-*, *supra*, at 299. That is not what the law requires. As noted above, where an alien demonstrates that she suffered past persecution on account of one of the statutory bases, it is "presumed" that her life or freedom would be threatened in the future "on the basis of the original claim"—in other words, on account of the *same statutory ground*. 8 C.F.R. § 1208.16(b)(1)(i); *see also* Asylum Procedures, 65 Fed. Reg. 76,121, 76,127 (Dec. 6, 2000) (asylum and withholding of removal regulations "provide that a person who has established past persecution on account of race, religion, nationality, membership in a particular social group, or political opinion shall be presumed to have a well-founded fear of future persecution *on account of those same grounds*" (emphasis added)). Here, the "original claim" was not "[female genital mutilation] persecution," as the Board put it, *Matter of A-T-*, *supra*, at 299 (stating that the "one-time" infliction of female genital mutilation "eliminate[es] the risk of *identical* future persecution" (emphasis added)), but rather persecution on account of membership in a particular (albeit not clearly defined) social group. Accordingly, if respondent was entitled to the presumption (a matter, as noted above, that the Board assumed, but did not actually decide), it was the Government's burden to show "that changed

---

[5] *Matter of S-A-K- and H-A-H-*, *supra*, involved a "humanitarian" grant of asylum based on "the severity of the past persecution," 8 C.F.R. § 1208.13(b)(1)(iii)(A) (2007), a form of discretionary relief that is unavailable in the withholding-of-removal context.

conditions obviate[d] the risk to life or freedom related to the original claim"—here, persecution on account of membership in the particular social group—not to show "that the particular act of persecution suffered by the victim in the past will not recur." *Bah v. Mukasey*, *supra*, at 115. The Board's opinions do not reflect this important point.[6]

## III.

Because the foregoing legal and factual errors precluded proper consideration of respondent's claim for withholding of removal, I vacate the Board's disposition of that claim and remand for reconsideration consistent with this opinion. The Board's reconsideration of respondent's claim should address the following issues:

> (i) whether respondent is entitled to the presumption described in 8 C.F.R. § 1208.16(b)(1)(i) because she has established past persecution on account of membership in a particular social group (or one of the other grounds enumerated in the Act and the regulations);[7]

---

[6] In its order denying respondent's motion for reconsideration, the Board rejected respondent's argument that female genital mutilation was "a single type of harm in a series of injuries inflicted on account of one's membership in a particular social group" on the ground that she had not met "*her* burden of proof for such a claim. (Emphasis added.) The Board's basis for imposing this burden of proof on respondent is not entirely clear, although it may be 8 C.F.R. § 1208.16(b)(1)(iii), which provides that "[i]f the applicant's fear of future threat to life or freedom is unrelated to the past persecution, the *applicant* bears the burden of establishing that it is more likely than not that he or she would suffer such harm." (Emphasis added.) In its initial decision, the Board had expressly found that respondent's fear of forced marriage was "unrelated" to her previous persecution through female genital mutilation. *See Matter of A-T-*, *supra*, at 304. In its order denying reconsideration, however, the Board seemed, at least implicitly, to accept the possibility that an applicant's fear of forced marriage could be related to her past persecution. I leave this issue for the Board to revisit or clarify on remand as needed. I note, however, that whether a fear of future harm is "related" to past persecution on account of membership in a particular social group will often require, as a threshold matter, defining what the particular social group is. Here, the Board did not do that.

[7] In most cases of this sort, it would be better practice for Immigration Judges and the Board to address at the outset whether the applicant has established persecution on account of membership in a particular social group, rather than assuming it as the Board did here. Deciding that issue—and defining the particular social group of which the applicant is a part—is fundamental to the analysis of which party bears the burden of proof and what the nature of that burden is. Of course, because it is the applicant's burden in the first instance to show that he or she had been persecuted in the past on account of a protected ground, the applicant must initially identify the particular social group or groups in which membership is claimed. *See* 8 C.F.R. § 1208.16(b); *see also Matter of A-M-E- & J-G-U-*, 24 I&N Dec. 69 (BIA 2007).

(ii) if so, whether the Government has satisfied or can satisfy its burden under 8 C.F.R. §§ 1208.16(b)(1)(i)(A)-(B) and (ii) of establishing one of the factors that would rebut the presumption; and

(iii) what effect, if any, the "relatedness" provision in 8 C.F.R. § 1208.16(b)(1)(iii) has on respondent's claim for relief.

So ordered.