# United States Court of Appeals

## For the First Circuit

No. 09-1464

YA YA DEEN MARIKO AND TIRANKE KABA,

Petitioners,

v.

ERIC H. HOLDER, JR., ATTORNEY GENERAL,

Respondent.

PETITION FOR REVIEW OF AN ORDER OF THE BOARD OF

IMMIGRATION APPEALS

Before

Lipez, Selya and Howard, Circuit Judges.

Randy Olen and Robert D. Watt, Jr. on brief for petitioners.
Tony West, Assistant Attorney General, Civil Division,
Jennifer Paisner-Williams, Senior Litigation Counsel, Office of
Immigration Litigation, and Yedidya Cohen, Trial Attorney, Office
of Immigration Litigation, on brief for respondent.

January 24, 2011

**SELYA**, **Circuit Judge**. The lead petitioner, Ya Ya Deen Mariko, and the derivative petitioner, Tiranke Kaba, are husband and wife.[1] Both of them are Guinean nationals. They seek review of a final order of the Board of Immigration Appeals (BIA), which affirmed a decision of an immigration judge (IJ) denying withholding of removal and protection under the Convention Against Torture (CAT). They also seek review of the BIA's denial of their motion to remand. Discerning no cognizable error, we reject the petition.

## I. BACKGROUND

The facts are straightforward. Mariko entered the United States in late 2001, thus reuniting with Kaba, who had entered more than a year earlier. Both petitioners were here illegally and, in 2004, the Department of Homeland Security initiated removal proceedings. See 8 U.S.C. § 1182(a)(6)(A)(i), (7)(A)(i)(I). The petitioners conceded removability but cross-applied for withholding of removal and protection under the CAT.

---

[1] We use the terms "lead" and "derivative" because, in his application, Mariko described Kaba as a derivative beneficiary of his claims for relief. The petitioners' brief continues this usage. We note, however, that Mariko only applied for withholding of removal and protection under the United Nations Convention Against Torture (CAT). The statutory provision that the petitioners cite, 8 U.S.C. § 1158(b)(3)(A), allows for derivative status only when the lead petitioner applies for asylum. The regulations concerning withholding of removal and CAT protection make no allowance for derivative claims. See 8 C.F.R. § 1208.16(b), (c). Accordingly, derivative claims cannot be prosecuted for withholding of removal or protection under the CAT. See Warui v. Holder, 577 F.3d 55, 58 (1st Cir. 2009).

The IJ convened a hearing on April 17, 2007. Mariko, the only live witness, claimed that he feared persecution in his homeland on account of his membership in the Guinea People's Rally (RPG), a political party that opposed the party in power. He professed himself to have been the RPG's "secretary for youth . . . something like that," whose duties included recruiting new members, campaigning, giving speeches, and working with young people. These activities, he testified, led him into harm's way.

Mariko recounted that, on November 11, 2001, armed soldiers broke up an RPG meeting and arrested him along with other party members. He was beaten, brought to a military camp, placed in a cell, and detained for approximately 19 days. His captors accused him of trying to overthrow the government and tortured him repeatedly. As a result of these beatings, Mariko sustained injuries "everywhere" from his neck to his waist and bled profusely from "tears" on his body. In addition, his thumb was permanently damaged (though he could not remember when or how this occurred).

Mariko eventually escaped from the camp and made his way to a friend's house. He later purchased a phony passport and traveled to France. Once there, he purchased a second passport, used it fraudulently to fly to Chicago, and then journeyed to Rhode Island to join his wife.

Under cross-examination, Mariko said that he possesses a birth certificate, Guinean passport, and national identification

card.  He told the IJ that his brother (who still lived in Guinea) had procured these documents and mailed them to him in 2004 or 2005.  He conceded that, when he received his identification card, it bore both a signature and a fingerprint.  Since the petitioner had not been in Guinea since 2001, the signature and fingerprint were necessarily bogus.  Mariko further admitted that his passport may have been obtained fraudulently.

To support his claim of mistreatment while in Guinea, Mariko had introduced into evidence a summary of his medical records.  On cross-examination, he was unable to explain why his medical records reflected injuries only to his thumb and ring finger.  He was equally at a loss to explain how this jibed with his assertion that he was "wounded everywhere."  His claim that he had received the summary document by mail in either 2002 or 2003 was suspect on its face; the medical records bore a date of June 6, 2006.

Mariko's grasp of the politics of his homeland seemed shaky.  Though he correctly identified the leader of the RPG, he evaded direct questions about significant events in the annals of the party.  In a similar vein, he failed to explain inconsistencies between his testimony and his earlier affidavit in support of his application for relief, including inconsistencies regarding the frequency of the torture that he had endured.

Faced with this scumbled record, the IJ denied the application for withholding of removal and protection under the CAT. The cornerstone of the IJ's decision was an adverse credibility determination. Once Mariko's testimony was discounted on that basis, what remained was insufficient to sustain the petitioners' devoir of persuasion on their claims for relief.

The petitioners appealed to the BIA, challenging the adverse credibility determination. They argued that the IJ (i) erroneously concluded that Mariko's testimony lacked sufficient detail; (ii) ascribed too much weight to Mariko's use of questionable documents; and (iii) relied too heavily on Mariko's inability to specify the date when he received the medical records.

On December 1, 2008 — while their appeal to the BIA was pending — the petitioners filed a motion to remand. They theorized that Kaba was newly eligible for asylum based upon changed circumstances. In support, they cited (i) the birth of their daughter, Su-ad, on September 17, 2008, and (ii) an opinion recently issued by the Attorney General in an unrelated case. In an order dated March 10, 2009, the BIA adopted and affirmed the IJ's decision and simultaneously denied the motion to remand. With respect to the latter, the BIA noted that Kaba had premised her new asylum claim solely on a fear that her newborn daughter probably would fall victim to female genital mutilation (FGM) in Guinea.

Such a claim, the BIA concluded, was inadequate on its face. This timely petition for judicial review followed.

## II. ANALYSIS

On a petition for judicial review, we typically direct our appraisal to the final orders of the BIA. Seng v. Holder, 584 F.3d 13, 17 (1st Cir. 2009). But where "the BIA has adopted the IJ's decision in whole or in part, we review the pertinent portions of the IJ's decision as well." Rivas-Mira v. Holder, 556 F.3d 1, 4 (1st Cir. 2009). This is such a case.

In conducting this review, we examine findings of fact (including credibility determinations) under the substantial evidence standard. López-Castro v. Holder, 577 F.3d 49, 52 (1st Cir. 2009); Da Silva v. Ashcroft, 394 F.3d 1, 4 (1st Cir. 2005). This standard requires us to defer to the agency's findings as long as they are "supported by reasonable, substantial, and probative evidence on the record considered as a whole." Nikijuluw v. Gonzales, 427 F.3d 115, 120 (1st Cir. 2005) (quoting INS v. Elias-Zacarias, 502 U.S. 478, 481 (1992)). Absent an error of law, we will reverse only if the record compels a conclusion contrary to that reached by the agency.[2] Chhay v. Mukasey, 540 F.3d 1, 5 (1st Cir. 2008).

---

[2] Abstract legal determinations are afforded de novo review, subject to some measure of deference to the agency's interpretation of statutes and regulations that fall within its ambit. See Seng, 584 F.3d at 17. This review modality is not implicated here.

-6-

### A. __Adjudicated Claims__.

We begin with the adjudicated claims for withholding of removal and protection under the CAT.

__1.__ __Withholding of Removal__. A well-defined legal framework governs applications for withholding of removal. The applicant must show that, independent of any presumption, there is a clear probability that he will be subjected to persecution on account of a statutorily protected ground upon repatriation. See López-Castro, 577 F.3d at 52; Chhay, 540 F.3d at 6. For this purpose, there are five statutorily protected grounds: race, religion, nationality, membership in a particular social group, and political opinion. 8 U.S.C. § 1231(b)(3)(B)(i).

In the case at hand, Mariko alleges persecution on account of his political opinion, as manifested by his membership in the RPG. This is a statutorily protected ground. Building on that foundation, he rehearses the persecution that he claims to have suffered in the past, asserts that the same regime remains in power, and voices his fear of being harmed upon his return to Guinea. The IJ and the BIA rejected this claim primarily because of doubts about the veracity of Mariko's account of past persecution.

Before turning to the supportability of this determination, we pause to make an important temporal point. Mariko filed his application for relief after May 11, 2005. Thus,

his case is controlled by the credibility standard embedded in the REAL ID Act of 2005. Pub. L. No. 109-13, § 101(a)(3), 119 Stat. 302, 303 (codified at 8 U.S.C. § 1158(b)(1)(B)(iii)). In gauging credibility under that standard, an IJ is directed to consider the "totality of the circumstances, and all relevant factors," including but not limited to the alien's demeanor, responsiveness, and prior statements. Id. The IJ may also consider, where relevant, the plausibility of the alien's story and the presence or absence of corroborative evidence. See 8 U.S.C. § 1158(b)(1)(B)(iii). If the IJ reasonably deems the alien's testimony "speculative or unworthy of credence," that testimony may be either discounted or disregarded entirely. Rivas-Mira, 556 F.3d at 4 (quoting Bebri v. Mukasey, 545 F.3d 47, 50 (1st Cir. 2008)).

In denying withholding of removal, the IJ concluded that Mariko's tale was not believable. Mariko strives to persuade us that this adverse credibility determination was not predicated on substantial evidence. We are not convinced.

The IJ's determination was based on a series of specific findings. First, the IJ concluded that Mariko's use of fraudulent identification documents undermined his credibility. The factual premise on which this conclusion rests is rock-solid: Mariko admitted, in effect, that his identity card bore a signature and a fingerprint that did not belong to him. He also conceded that he had used fraudulent passports in the course of his journey to the

-8-

United States and that the passport currently in his possession might be fraudulent. Though there may be valid reasons for an émigré to make use of fraudulent documents to escape from persecution, this case bears no such hallmark. After all, Mariko obtained a third fraudulent passport and the bogus identification card after he was safely within the United States. Moreover, he testified that his motivation behind obtaining these documents was that he "got the lottery" and "wanted to get some documents from [his] country." On this record, the IJ was entitled to draw an inference of untrustworthiness from this serial use of fraudulent documentation. See Olujoke v. Gonzales, 411 F.3d 16, 22 n.5 (1st Cir. 2005).

A second data point to which the IJ adverted concerned the inconsistencies between Mariko's words and the medical records. In his testimony, Mariko alleged that soldiers had subjected him to full-body beatings and caused numerous "tears" in his skin. But the medical records noted only a hand injury. Mariko was unable either to explain this discrepancy or to pin down the time when the medical records were generated.

Third, the IJ found Mariko's professed relationship to the RPG to be "vague" and his testimony on this point lacking in detail. As an example, the IJ noted Mariko's inability to define his role in the organization. We view these findings as part and parcel of the IJ's global finding that Mariko's demeanor was

disconcerting (and, thus, suggestive of untruthfulness). In this regard, the IJ noted that the pace of Mariko's testimony "slowed perceptibly" when he was asked about his potential involvement.

Finally, the IJ found significant inconsistencies between the affidavit that Mariko submitted in support of his original application for relief and his hearing testimony. These inconsistencies related to such things as the beatings, his detention, and his interrogation. For example, in his affidavit Mariko vouchsafed that he was interrogated on each of the 19 days that he was detained and beaten each time that he was interrogated. In his testimony, however, he said that he was beaten only three to five times during the entire 19-day span.

To bolster their argument that the IJ's adverse credibility determination was not supported by substantial evidence, the petitioners attempt to trivialize the individual failings and inconsistencies catalogued by the IJ. But the whole sometimes can exceed the sum of the parts, and the appropriate test focuses on the totality of the circumstances. The IJ's findings, in cumulation, constitute substantial evidence. See Pan v. Gonzales, 489 F.3d 80, 86 (1st Cir. 2007) ("Some of these inconsistencies, in isolation, may seem like small potatoes. What counts, however, is that their cumulative effect is great."). The record evidence is not such as to compel a reasonable factfinder to make a contrary determination and, thus, the IJ's assessment of

-10-

Mariko's credibility deserves our approbation. See Da Silva, 394 F.3d at 4-5; see also 8 U.S.C. § 1252(b)(4)(B). Given that supportable determination, it follows inexorably that the BIA's denial of Mariko's application for withholding of removal must be upheld.

2. **Protection under the CAT**. This leaves Mariko's claim for protection under the CAT. To succeed on this claim Mariko had to prove that, more likely than not, he would be tortured if deported to his homeland. See 8 C.F.R. § 1208.16(c)(2); see also Ahmed v. Holder, 611 F.3d 90, 97-98 (1st Cir. 2010).

On the facts of this case, Mariko's CAT claim is inextricably intertwined with his withholding of removal claim. Thus, what we have said about the supportability of the adverse credibility determination dooms Mariko's claim for CAT protection just as surely as it doomed his claim for withholding of removal.

### B. **Motion to Remand**.

The last leg of our journey tracks the BIA's denial of the petitioners' motion. The petitioners styled their motion as a motion "to remand." This nomenclature does not affect the applicable legal framework. See Conteh v. Gonzales, 461 F.3d 45, 63-64 (1st Cir. 2006). When, as in this case, an appealing alien has filed a motion that seeks to have the BIA return an appealed case to the IJ for further proceedings based on newly available information, that motion, however denominated, must satisfy the

requirements that attend a motion to reopen. See Falae v. Gonzales, 411 F.3d 11, 14 (1st Cir. 2005); In re Coelho, 20 I. & N. Dec. 464, 471 (BIA 1992).

The BIA may rely on any of three independent grounds in denying a motion to reopen: failure to make out a prima facie case for the relief sought; failure to identify new and material evidence, previously unavailable; or, even if these requirements are met, failure to establish an entitlement to the discretionary relief sought. INS v. Doherty, 502 U.S. 314, 323 (1992). Here, the BIA denied the petitioners' motion on the first ground. We review this denial for abuse of discretion. Fesseha v. Ashcroft, 333 F.3d 13, 20 (1st Cir. 2003). We will interfere with the BIA's exercise of discretion only if it appears that the BIA made "an error of law or acted in a manner that is fairly characterizable as arbitrary or capricious." Falae, 411 F.3d at 14.

The motion to remand asserted that Kaba was newly eligible to apply for asylum due to changed circumstances.[3] Pertinently, the term "changed circumstances" is a term of art. It means "changes in the applicant's circumstances that materially affect the applicant's eligibility for asylum, including changes in applicable U.S. law and activities the applicant becomes involved

---

[3] Originally, both Mariko and Kaba were time-barred from pursuing asylum because each of them was in the United States for more than a year before joining any application for relief. See 8 U.S.C. § 1158(a)(2)(B); Chhay, 540 F.3d at 4.

-12-

in outside the country of feared persecution that place the applicant at risk." 8 C.F.R. § 1208.4(a)(4)(i)(B). In support, the petitioners cited two items: the birth of their daughter, Su-ad, on September 17, 2008,[4] and the Attorney General's opinion in Matter of A-T, 24 I. & N. Dec. 617 (A.G. 2008). We examine each item.

The petitioners' claim that Su-ad's birth constituted a material change in circumstances rests on an allegation that both Kaba and her older daughter had been subjected to FGM in Guinea. The petitioners maintained that, for this reason, they feared that Su-ad would suffer the same fate if the family returned to that country.

The BIA rejected this proposition, relying on its own precedent as well as jurisprudence from this court. In Matter of A-K, 24 I. & N. Dec. 275 (BIA 2007), the BIA concluded that a father was not eligible for either asylum or withholding of removal based on his claim that his United States citizen daughters would be subjected to FGM in his homeland. Id. at 277-78.

Matter of A-K is not an outlier. We, too, have affirmed BIA decisions denying asylum based on potential persecution of family members. Thus, in Kechichian v. Mukasey, 535 F.3d 15 (1st Cir. 2008), we held that the BIA did not abuse its discretion in

_____

[4] Because Su-ad was born in the United States, she — unlike her parents — is a United States citizen. See United States v. Wong Kim Ark, 169 U.S. 649, 702 (1898).

-13-

denying a motion to reopen based on the potential persecution of the alien's son.  Id. at 22.  The same principle anchored our decision in Burbiene v. Holder, 568 F.3d 251, 254 n.3 (1st Cir. 2009).

Those decisions are controlling here.  Although a child may be a derivative beneficiary of a parent's claim for asylum, the grounds for asylum must relate directly to the parent's situation.  There is no authority, either statutory or in the case law, that indicates that the parent may, in effect, be a derivative beneficiary of her child's asylum claim.  The BIA was, therefore, warranted in refusing to reopen the case to allow Kaba to pursue a theory on which she could not prevail.

We deal next with the petitioners' asseveration that Matter of A-T represented a "change[] in applicable U.S. law," which entitles Kaba to asylum.  This asseveration lacks force.

In Matter of A-T, the Attorney General vacated the BIA's denial of an adult woman's application for withholding of removal. 24 I. & N. Dec. at 617-18.  The Attorney General concluded that the agency had erred in finding that, because FGM "cannot occur more than once" to any one person, the application had to be denied on the ground that the feared future persecution could not "take precisely the same form as past persecution."  Id. at 621.  The Attorney General instructed the BIA, on remand, to determine whether the fact that the alien had been subjected to FGM in the

-14-

past triggered a presumption of a continuing threat to her life or freedom on account of her membership in a particular social group (presumably women who had been subjected to FGM). Id. at 623; see also 8 C.F.R. § 1208.16(b)(1)(i).

This opinion does not help the petitioners. While Kaba had undergone FGM as a child in Guinea, her claim of eligibility for asylum was not based either on her plight or on her membership in a class of females who had been similarly brutalized. Rather, Kaba premised her claim on a fear that her daughter would be subjected to FGM if she were relocated to Guinea. Matter of A-T is, therefore, not on point.

In an effort to detour around this reasoning, the petitioners suggest in this court, for the first time, that Kaba herself harbors a well-founded fear of future persecution based on her childhood experience with FGM. This suggestion comes too late in the day. A petitioner must exhaust her administrative remedies by presenting each of her claims face up and squarely to the agency. See Chhay, 540 F.3d at 5-6. This court cannot consider an unexhausted claim on a petition for judicial review. See id. This restraint is consistent with the statutory directive that statutory authority allows review of a final removal order only after "the alien has exhausted all administrative remedies available to the alien as of right." 8 U.S.C. § 1252(d)(1); see also Makoul v. Ashcroft, 387 F.3d 75, 80 (1st Cir. 2004) (explaining that theories

not seasonably advanced before the BIA cannot be presented for the first time in the court of appeals).

## III.  CONCLUSION

We need go no further.  For the reasons elucidated above, we deny the petition for judicial review in all of its particulars.


**So Ordered**.