**Not for Publication in West's Federal Reporter**

# United States Court of Appeals
## For the First Circuit

No. 23-1250

JOAO PAULO GONCALVES CARVALHO; J.V.A.C.,

Petitioners,

v.

MERRICK B. GARLAND, United States Attorney General,

Respondent.

PETITION FOR REVIEW OF AN ORDER OF
THE BOARD OF IMMIGRATION APPEALS

Before

Gelpí, Lynch, Rikelman,
Circuit Judges.

Saher J. Macarius, Audrey Botros, and Law Offices of Saher J. Macarius LLC on brief for petitioner.

Sunah Lee, Senior Trial Attorney, Office of Immigration Litigation, Cindy S. Ferrier, Assistant Director, Office of Immigration Litigation, and Brian Boynton, Principal Deputy Assistant Attorney General, Civil Division, U.S. Department of Justice on brief for respondent.

August 13, 2024

**LYNCH**, **Circuit Judge**. Joao Paulo Goncalves Carvalho and his son, Joao Victor Antunez Carvalho, of Brazil, petition for review of a decision of the Board of Immigration Appeals ("BIA") affirming an Immigration Judge's ("IJ") order denying their applications for asylum, and the father petitions for review of the denial of his application for withholding of removal as well as relief under the Convention Against Torture ("CAT"). See 8 U.S.C. §§ 1158(b)(1)(A), 1231(b)(3)(A); 8 C.F.R. §§ 1208.16(c)(2), 1208.18(a)(1); see also Convention Against Torture, art. 3, Dec. 10, 1984, S. Treaty Doc. No. 100-20 (1988).

The IJ found Goncalves Carvalho not to be credible in his testimony in support of these applications. The BIA upheld the IJ's denials of relief, finding, inter alia, that there was no error in the IJ's finding that the petitioner's testimony was not credible and, in the alternative, that the petitioner failed to sustain his burden of proof for asylum and withholding of removal even if his testimony were found credible. The BIA further found that there was no error in the IJ's finding that the petitioner failed to demonstrate eligibility for CAT protection.

We need not reach the BIA's alternative ground for denial. The BIA and IJ's (collectively, "the agency") adverse credibility determination is supported by substantial evidence and is alone sufficient to deny the petitioner's application for asylum

- 2 -

and withholding of removal.  We also agree with the agency that the petitioner has not met the standard for protection under CAT.

We deny the petition for review.

**I.**

The petitioner and his son[1] entered the United States on or around April 5, 2018 without valid entry documents.  The next day, they were served with Notices to Appear, charging them with removability pursuant to 8 U.S.C. § 1182(a)(7)(A)(i)(I).  The petitioner and his son conceded removability in pleadings submitted to the IJ and at an initial hearing before the IJ on September 13, 2018.  On October 15, 2018, the petitioner filed an application for asylum, naming his son as a derivative beneficiary, and for withholding of removal and protection under CAT.  He submitted a written declaration, dated October 12, 2018, in support of his claims.

The petitioner appeared before the IJ on September 12, 2019, represented by counsel, where he was the sole witness to

---

[1] We refer to Goncalves Carvalho throughout as the "petitioner," acknowledging that Antunez Carvalho has a derivative claim for asylum.  Antunez Carvalho is not, however, eligible for withholding of removal or protection under CAT because these forms of relief do not carry derivative benefits and Antunez Carvalho did not file any separate applications.  See Mariko v. Holder, 632 F.3d 1, 1 n.1 (1st Cir. 2011).

- 3 -

testify.[2]  The IJ found the petitioner's testimony to be not credible.

The IJ denied the petitioner's applications and ordered the petitioner and his son removed to Brazil.  The IJ found that the petitioner did not qualify for asylum for two independent reasons, the first being that his testimony was not credible and lacked sufficient corroborating evidence to meet his burden of proof.  The IJ found the petitioner's testimony to be not credible because "[t]here were too many inconsistencies between his testimony and his written statement" and "[t]he omissions [were] glaring and significant."  The petitioner failed to provide a "satisfactory" explanation for these inconsistencies.  The IJ further found that "there [was] very little corroborating evidence in the record other than country conditions evidence."  The IJ accordingly found that the petitioner "[had] failed to meet his statutory burden of proof for asylum."  In the alternative, the IJ also found that even if the petitioner's testimony had been credible, the petitioner's alleged harms were still insufficient to demonstrate persecution on account of a protected ground.

The IJ then held that it necessarily followed that the petitioner "cannot meet the higher burden of proof for withholding

_____

[2] While Goncalves Carvalho did not claim protection under CAT in his initial pleadings before the IJ, we consider his claim as made in his asylum application.

- 4 -

of removal." The IJ also denied the petitioner's claim for protection under CAT because the petitioner presented no evidence showing that "the police in any way acquiesced or turned a blind eye to the activity going on to harm him."

The petitioner appealed to the BIA, arguing again through counsel that he: (1) gave credible testimony; (2) demonstrated past persecution on account of his political opinion and religion;[3] and (3) demonstrated a fear of future persecution on the same grounds.

The BIA affirmed. First, the BIA "discern[ed] no clear error in the Immigration Judge's adverse credibility finding." The BIA agreed with the IJ that the inconsistencies between the petitioner's testimony and written declaration "go beyond mere

---

[3] The petitioner's brief before the BIA framed this issue as one of "past persecution due to political opinion and membership in a particular social group." (Emphasis added). However, the brief made no arguments as to particular social group, and petitioner's counsel had withdrawn the argument before the IJ. The BIA accordingly found a claim based on particular social group waived. The BIA also found a claim based on race waived because the petitioner did not meaningfully challenge the IJ's finding regarding this claim nor did he "make any meaningful arguments on appeal regarding race." We agree. The petitioner argues before this court that the petitioner's "race is tied to his religious beliefs as well," suggesting that any argument made on account of religion should also be taken as an argument on account of race. But this argument was not properly exhausted before the BIA, and we do not consider it. See Singh v. Garland, 87 F.4th 52, 58-59 (1st Cir. 2023) ("[W]e consistently have held that arguments not made before the BIA may not make their debut in a petition for judicial review of the BIA's final order." (quoting Gomez-Abrego v. Garland, 26 F.4th 39, 47 (1st Cir. 2022))(internal quotation marks omitted in original)).

details and relate to whether the [petitioner] suffered persecution in Brazil, a central aspect of his asylum claim." The BIA also agreed that the petitioner "did not submit sufficient corroborating evidence." In the alternative, assuming the credibility of the petitioner's testimony, the BIA concluded that the petitioner had failed to establish any nexus between his alleged harms and a protected ground.

The BIA affirmed the IJ's finding that the petitioner did not satisfy "the higher standard of a clear probability of persecution as required for withholding of removal under the INA." The BIA also affirmed the IJ's finding that the petitioner did not demonstrate eligibility for CAT protection because the petitioner failed to meet his burden of proof.

This timely petition for review followed.

## II.

"We review the BIA's decision . . . as the agency's final decision and look to the IJ's decision only 'to the extent that the BIA deferred to or adopted the IJ's reasoning.'" Mendez v. Garland, 67 F.4th 474, 481 (1st Cir. 2023) (quoting Chavez v. Garland, 51 F.4th 424, 429 (1st Cir. 2022)). We apply the deferential "substantial evidence standard" to the IJ's factual findings, including adverse credibility determinations, which "requires us to accept the [IJ's] factual findings . . . unless the record is such as to compel a reasonable factfinder to reach

- 6 -

a contrary conclusion." Dorce v. Garland, 50 F.4th 207, 212 (1st Cir. 2022) (emphasis and omission in original) (quoting Mazariegos-Paiz v. Holder, 734 F.3d 57, 64 (1st Cir. 2013)). For adverse credibility determinations, "we narrowly inquire whether: (i) the discrepancies articulated by the IJ and/or the BIA are actually present in the administrative record; (ii) the discrepancies generate specific and cogent reasons from which to infer that petitioner or his witnesses provided non-creditworthy testimony; and (iii) petitioner failed to provide a persuasive explanation for these discrepancies." Cuko v. Mukasey, 522 F.3d 32, 37 (1st Cir. 2008).

We first turn to the petitioner's asylum application. In order to succeed on an asylum application, a petitioner must "'demonstrate a well-founded fear of persecution on one of five protected grounds' -- race, religion, nationality, political opinion or membership in a particular social group." Paiz-Morales v. Lynch, 795 F.3d 238, 243 (1st Cir. 2015) (quoting Singh v. Holder, 750 F.3d 84, 86 (1st Cir. 2014)); see 8 U.S.C. §§ 1101(a)(42), 1158(b)(1)(B)(i). A petitioner must demonstrate that one of the five protected grounds is at least "one central reason for the harm alleged." Barnica-Lopez v. Garland, 59 F.4th 520, 528 (1st Cir. 2023) (quoting Sanchez-Vasquez v. Garland, 994 F.3d 40, 47 (1st Cir. 2021) (internal quotation marks omitted)); 8 U.S.C. § 1158(b)(1)(B)(i). A petitioner's "testimony, if

- 7 -

credible, can on its own be sufficient to meet this burden." Jin Lin v. Holder, 561 F.3d 68, 71 (1st Cir. 2009). However, the testimony "may be discounted or completely disregarded" if the agency finds it to be not credible. Id.

The IJ and BIA both concluded that the petitioner's testimony was not credible and lacked corroborating evidence. Substantial evidence supports this conclusion. We affirm.

Credibility determinations in cases filed after May 11, 2005, such as the petitioner's, are controlled by the REAL ID Act. Pub. L. No. 109-13, § 101(a)(3), 119 Stat. 302, 303 (codified at 8 U.S.C. § 1158(b)(1)(B)(iii)); see Mariko, 632 F.3d at 5. Under that standard, the IJ considers "the totality of the circumstances, and all relevant factors," including "the consistency between the applicant's or witness's written and oral statements" and "the consistency of such statements with other evidence of record." 8 U.S.C. § 1158(b)(1)(B)(iii). "In the event that an applicant is found not to be entirely credible in [his] testimony, corroborating evidence may be used to bolster [his] credibility." Jin Lin, 531 F.3d at 72.

The IJ's adverse credibility determinations here rested on material discrepancies between the petitioner's testimony on September 12, 2019 and his written declaration dated October 12, 2018. We begin with the unequivocal facts in the record before turning to these discrepancies. The petitioner was thirty-seven

years old at the time of the hearing. The petitioner testified that in Brazil, he borrowed 80,000 reals from a loan shark, which he has not repaid and cannot repay, and which he said has spawned a series of threats to him and his family. In addition, the petitioner asserts that he is an Evangelical Christian and that he has been targeted due to his religion and race. This targeting includes being called racial slurs and some other incidents discussed below.

As the IJ found, the petitioner's description of the threats he and his family received in connection with the outstanding loan are inconsistent with his declaration. In his declaration, the petitioner referred to a single and unaccompanied loan shark, stating that "[h]e went to my house on many occasions to threaten me" and that "[h]e also went to the door of my son's school to threaten him," and related no other threats. (Emphases added). His declaration did not state that the loan shark was armed or that he was accompanied. In contrast, in his testimony, the petitioner stated that "three guys showed up to my house and called me outside to talk, and they were armed." (Emphases added). And the petitioner, in his testimony, added an additional incident: that they threatened the petitioner outside the hospital after his second child was born, stating that they would harm his family.

The IJ also properly noted inconsistencies in the petitioner's various accounts of the harm he said he had incurred

- 9 -

on the basis of his race and religion.  Absent from his written declaration, but present in his testimony, he said that he and his family: (1) were beaten while walking to church and called religious slurs; (2) were barred by Catholics, using physical force, from participating in an open-air mass on account of their Evangelical religion; and (3) were barred from using the bathroom in a commercial establishment on account of their race and were called racial slurs.  Further, the petitioner testified that he was robbed of money and jewelry on account of his race and religion, but in his declaration, he stated only that "[p]eople attempted to rob me near my house."  (Emphasis added).  When asked about these inconsistencies during the hearing, the petitioner first answered that he "didn't imagine that every detail was necessary for the entire trajectory of all the threats that happened."  He later gave the different explanation that he "was interrogated by seven agents for the immigration" and that "[t]he last one stuck his finger in my face," even though the declaration at issue was authored months following his entry into the United States.

The record supports the agency's holding that the petitioner had not submitted corroborating evidence in support of his claims. The only corroborating evidence submitted by the petitioner was a copy of his passport and marriage certificate,

country conditions reports, and external reports and articles with more information on country conditions.

The IJ gave specific and cogent reasons for her adverse credibility finding, pointing toward inconsistencies that are replete within the record. The petitioner was given multiple opportunities to explain the inconsistencies but provided only conflicting and unreasonable explanations. The petitioner failed to present any evidence corroborating his testimony, such as any evidence of the purported loan, any medical documentation of his injuries, or even evidence of his Evangelical Christian faith. An adverse credibility determination "dooms [an asylum application] . . . if the alien's case for asylum rests exclusively on his testimony," and such is the case here. Ahmed v. Holder, 765 F.3d 96, 101 (1st Cir. 2014).[4]

We turn next to the petitioner's application for withholding of removal under 8 U.S.C. § 1231(b)(3). To succeed, the petitioner "must show that, if returned to his homeland, he

---

[4] The petitioner argues that the BIA abused its discretion in failing to address the petitioner's "separate ground for relief" based on a well-founded fear of future persecution. Not so. The BIA's adverse credibility determination necessarily reached both petitioner's claim based on past persecution and that based on a well-founded fear of future persecution because his whole case turned on his testimony. See Ahmed, 765 F.3d at 101 (upholding the BIA's denial of petitioner's asylum claim based on fear of future persecution that the BIA found "to be dependent upon the petitioner's incredible testimony and, thus, inadequately supported").

- 11 -

would more likely than not be subject to persecution on account of a statutorily protected ground." Amouri v. Holder, 572 F.3d 29, 35 (1st Cir. 2009). "A petitioner who cannot clear the lower hurdle for asylum will necessarily fail to meet the higher bar for withholding of removal." Paiz-Morales, 795 F.3d at 245. Here, the petitioner's asylum claim fails, so his withholding of removal claim fails as well.

We turn last to the petitioner's application for protection under CAT. We agree with the BIA that the petitioner "has not shown that it is more likely than not he would be tortured by, or at the instigation of, or with the consent or acquiescence (including willful blindness) of a public official or other person acting in an official capacity upon removal to Brazil." See Hincapie v. Gonzales, 494 F.3d 213, 221 (1st Cir. 2007) ("[T]he infliction of harm does not constitute torture within the meaning of the CAT unless that harm is inflicted by, at the direction of, or with the acquiescence of government officials."); see also 8 C.F.R. § 1208.16(c)(2); 8 C.F.R. § 1208.18(a)(1). The agency based its conclusion on the fact that the petitioner "testified that he does not fear any persons in the government of Brazil," has "never been physically harmed by anyone from the government of Brazil," and has "never reported any of [the alleged instances of persecution] to the police." The agency buttressed its conclusion with the fact that the petitioner testified that the police

- 12 -

"interceded and protected" him and his son "on the one occasion that they were present." (Emphasis added). Substantial evidence supports the agency's conclusion based on these facts.

The petition for review of the decision of the BIA is **denied**.